IN THE UNITED STATES DISTRICT COURT
GOT THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GOR INVESTMENT LIMITED,** *et al.* ) | |
| ) | |
| *Plaintiffs,* ) | Civil Action No. 1:25-CV-04506 |
| ) | |
| **v.** ) | **Jury Trial Demanded** |
| ) | |
| **STRAIFE, LLC,** *et al.* ) | |
| ) | |
| *Defendants.* ) | |

## <u>DEFENDANT STEVEN PRENTISS PAYNE'S ANSWER</u>

Defendant Stephen Prentiss Payne ("Defendant Payne" or "Payne"), by and through undersigned counsel, hereby answers the Complaint filed by Plaintiffs Ovik Mkrtchyan and Gor Investment Limited (collectively, "Plaintiffs"). Except as expressly admitted herein, all allegations are denied. All headings in the Complaint are denied to the extent they contain factual or legal assertions.

As a preliminary matter, this lawsuit is a transparent attempt by Mkrtchyan to retaliate against Payne for exercising his right to communicate with foreign government officials about matters of legitimate concern. Mkrtchyan's Complaint omits critical context: Payne's August 2024 letter to Uzbekistan's President was based on information Payne learned after his April 2024 letter of support—information that called into serious question the accuracy of the representations Mkrtchyan and his agent Uktam Aripov had made to Payne over the course of their business relationship. Payne's statements reflected his good-faith understanding of the facts, and this lawsuit seeks to punish him for correcting the record.

Beyond these substantive deficiencies, the Complaint is fatally flawed as a matter of pleading. Plaintiffs are limited-purpose public figures who must plead actual malice with

specificity, yet their defamation claim rests entirely on the conclusory assertion that Payne "knew" his statements were false—without identifying a single piece of information Payne allegedly possessed that contradicted his August 2024 letter at the time he sent it. Plaintiffs' tortious interference and injurious falsehood claims fare no better: the Complaint fails to identify any specific contract that was breached or terminated, any specific counterparty that ceased doing business with Plaintiffs, or any specific government official who received the allegedly defamatory statements and took action against Plaintiffs' interests. Instead, Plaintiffs ask this Court to infer a causal chain spanning from a letter to the Uzbek President, through unidentified officials in Uzbekistan, to unspecified actions against unnamed counterparties, resulting in over $1 billion in damages. This is precisely the kind of speculative, attenuated theory of harm that fails to state a plausible claim for relief.

## RESPONSES TO SPECIFIC ALLEGATIONS
### *NATURE OF ACTION*

1.    Defendant Payne denies the allegations in this paragraph, including the characterization of any "campaign" and any assertion that Payne was "recruited" or "enticed" by Shadmanov or United Cement Group ("UCG"). Payne further denies that Plaintiffs have suffered over $1 billion in damages attributable to his conduct.

2.    Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Shadmanov's interactions with Mkrtchyan in 2023 and therefore denies them. To the extent this paragraph characterizes Mkrtchyan's January 2024 detention, Payne admits that he understood Mkrtchyan to have been detained in Uzbekistan. Payne denies the remaining allegations.

3.   Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the relationship between Plaintiffs and Defendants Straife and Fleming and therefore denies them.

4.   Defendant Payne admits that he worked with Mkrtchyan and his companies for a number of years, primarily through Mkrtchyan's agent and intermediary Uktam Aripov, who served as the conduit for virtually all communications between Mkrtchyan and Payne because Mkrtchyan does not communicate in English. Payne admits that he introduced Mkrtchyan to Fleming. Payne admits that he sent a letter in April 2024 on Mkrtchyan's behalf seeking his release from detention. Payne admits that he sent a subsequent letter in August 2024 to the Uzbek President. Payne denies that he was motivated solely by financial gain or that he acted at Fleming's and Straife's "direction," and denies the remaining allegations and characterizations in this paragraph.

5.   Defendant Payne denies that he devised or participated in a "covert smear-and-interference campaign" as characterized in this paragraph. Payne admits that he sent a letter to the Uzbek President in August 2024, that he requested confidential treatment of the letter, and that he communicated with the President regarding the letter. Payne denies that his statements were false or defamatory and denies the remaining allegations.

6.   Defendant Payne denies the allegations in this paragraph. Payne's August 2024 letter was not designed to "interfere" with Plaintiffs' contracts; it was a good-faith communication of concerns Payne had come to hold about Mkrtchyan based on information learned after his April 2024 letter.

7.   Defendant Payne denies the allegations in this paragraph.

8.   Defendant Payne denies the allegations in this paragraph, including any allegation that he acted with "knowing or reckless disregard for the truth." Payne's change in position between April and August 2024 was based on new information he received during and after the intervening period, not on any financial inducement.

9.   Defendant Payne denies the allegations in this paragraph.

10. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning any retraction by a law firm and therefore denies them.

### PARTIES

11. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Mkrtchyan's citizenship and residency and therefore denies them.

12. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Gor and therefore denies them.

13. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Straife and therefore denies them.

14. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Fleming and therefore denies them.

15. Defendant Payne admits that he is a natural person and a citizen and resident of Texas.

### JURISDICTION AND VENUE

16. Defendant Payne admits that this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a).

17. Defendant Payne does not contest personal jurisdiction in this action.

18. Paragraph 18 contains legal conclusions to which no response is required. To the extent a response is required, Defendant Payne does not contest personal jurisdiction.

19. Defendant Payne does not contest personal jurisdiction. Defendant Payne denies that he caused tortious injury as alleged.

20. Defendant Payne does not contest personal jurisdiction. Payne admits that he sent correspondence to the Uzbek President and that he communicated with the President regarding that correspondence. Payne denies the characterization of his conduct as tortious.

21. Defendant Payne does not contest personal jurisdiction.

22. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Straife and therefore denies them.

23. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Fleming and therefore denies them.

24. Defendant Payne admits that he is a lobbyist and consultant who regularly conducts business in the District of Columbia. Payne admits that he has founded and owns companies through which he conducts lobbying and consulting work, and that he has made filings under the LDA and FARA. Payne admits that his primary business address is listed as 633 Pennsylvania Avenue, N.W. in Washington, D.C. in recent FARA filings. The documents referenced in this paragraph speak for themselves. Payne denies any characterizations that are inaccurate.

25. Defendant Payne does not contest personal jurisdiction. The documents referenced speak for themselves.

26. Defendant Payne does not contest personal jurisdiction or venue.

27. Defendant Payne does not contest venue.

*FACTS*

### A. Ovik Mkrtchyan and Gor

28. Defendant Payne admits that Mkrtchyan is a businessman with operations in multiple countries, including Uzbekistan. Payne lacks knowledge or information sufficient to form a belief as to the remaining allegations and therefore denies them.

29. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

30. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

31. Defendant Payne admits that Gor's advisory board has included former Secretary of State Pompeo and former Secretary of Energy Perry. Payne was instrumental in recruiting both Secretary Pompeo and Secretary Perry to the Gor advisory board. Payne lacks knowledge or information sufficient to form a belief as to the remaining allegations and therefore denies them.

### B. Shadmanov's campaign of extortion and retaliation

32. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

33. Defendant Payne admits that Shadmanov is the principal shareholder of United Cement Group. Payne lacks knowledge or information sufficient to form a belief as to the remaining allegations.

34. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning direct interactions between Shadmanov and Mkrtchyan and therefore denies them. Payne states that information regarding Shadmanov's demands and conduct was conveyed to him primarily through Mkrtchyan's agent, Uktam Aripov.

35. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

36. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

### C. Shadmanov orchestrates Mkrtchyan's unlawful detention in Uzbekistan

37. Defendant Payne admits that he understood Mkrtchyan to have been detained in Uzbekistan in January 2024. Payne lacks knowledge or information sufficient to form a belief as to who orchestrated the detention and therefore denies the remaining allegations.

38. Defendant Payne admits that he understood Mkrtchyan and his daughter were detained. Payne lacks knowledge or information sufficient to form a belief as to the specific circumstances and therefore denies the remaining allegations.

39. Defendant Payne admits that Mkrtchyan was held in detention in Uzbekistan for several months. Payne lacks knowledge or information sufficient to form a belief as to the specific conditions of detention and therefore denies the remaining allegations.

40. Defendant Payne admits that he wrote a letter of support on behalf of Mkrtchyan in April 2024 addressed to the President of Uzbekistan and the Uzbek Ambassador in Washington. Payne admits that other associates of Mkrtchyan also wrote letters of support. Payne lacks knowledge or information sufficient to form a belief as to the remaining allegations.

41. Defendant Payne admits that he sent a letter dated April 10, 2024, to President Mirziyoyev and Ambassador Sidikov calling for Mkrtchyan's release. The letter speaks for itself. Payne states that the content of the April 2024 letter was based on representations made to him by Mkrtchyan's agent, Uktam Aripov, which Payne later came to question. Payne denies any characterizations of the letter inconsistent with its actual contents.

42. Defendant Payne admits that Mkrtchyan was released on or about April 12, 2024. Payne understood that his April 10, 2024, letter contributed to Mkrtchyan's release. Payne lacks knowledge or information sufficient to form a belief as to whether Mkrtchyan was "cleared of all charges" and therefore denies the remaining allegations.

43. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

44. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Shadmanov's plans. Payne denies that Mkrtchyan's departure from Uzbekistan was caused by "Defendants' conduct" as alleged.

### D. Mkrtchyan's trusted business associates partner with Shadmanov to turn against him

45. Defendant Payne denies the allegations in this paragraph.

46. Defendant Payne denies the allegations in this paragraph. Payne did not "conspire" with Shadmanov or anyone else to turn against Mkrtchyan.

#### 1. Joseph Fleming and Straife

47. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the relationship between Plaintiffs and Defendants Straife and Fleming, and therefore denies them.

48. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the relationship between Plaintiffs and Defendants Straife and Fleming, and therefore denies them.

49. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the relationship between Plaintiffs and Defendants Straife and Fleming, and therefore denies them.

50. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the relationship between Plaintiffs and Defendants Straife and Fleming, and therefore denies them.

51. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the relationship between Plaintiffs and Defendants Straife and Fleming, and therefore denies them.

52. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the relationship between Plaintiffs and Defendants Straife and Fleming, and therefore denies them.

### 2. Stephen Payne

53. Defendant Payne admits that he is a lobbyist, consultant, and businessperson with contacts in the District of Columbia. Payne denies any characterizations that are inaccurate.

54. Defendant Payne denies the allegations in this paragraph to the extent they are intended to characterize him negatively. The court records referenced in footnote 1 speak for themselves.

55. Defendant Payne admits that Mkrtchyan and his companies worked with Payne on potential business ventures over the years, primarily through the intermediation of Mkrtchyan's agent, Uktam Aripov, because Mkrtchyan does not communicate in English. Payne denies the remaining allegations.

56. Defendant Payne admits that he sent a letter dated April 10, 2024, to President Mirziyoyev and Ambassador Sidikov in support of Mkrtchyan's release. The letter speaks for itself. Payne states that the content of his April 2024 letter was based on representations made to him by Mkrtchyan's agent, Aripov, which Payne subsequently came to believe were inaccurate or incomplete. Payne denies any characterizations inconsistent with the letter's actual contents.

57. Defendant Payne admits that he raised concerns about UCG and Shadmanov with a Member of Congress and OFAC during the period of Mkrtchyan's detention, based on information provided to him by Aripov. Payne denies any inaccurate characterizations of those communications.

58. Defendant Payne admits that he sent a letter dated April 22, 2024, to the Uzbek President. The letter speaks for itself.

### *3. Fleming and Straife turn against Mkrtchyan and Gor*

59. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

60. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

61. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

62. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

63. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

64. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

65. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

66. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

67. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

68. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

69. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

70. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

71. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

72. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

73. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

74. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

75. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

76. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

77. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

### *4. Payne turns against Mkrtchyan and Gor*

78. Defendant Payne denies the allegations in this paragraph. Payne denies that Fleming "convinced" him to "abandon" Mkrtchyan, that Shadmanov or UCG promised anyone money to destroy Mkrtchyan's business, that Fleming gave Payne assurances that Mkrtchyan would be jailed, or that Fleming agreed to pay Payne for participation in any conspiracy. Payne's decision to retract his April 2024 letter was based on his own independent assessment that the representations made to him by Mkrtchyan's agent Aripov—upon which his April 2024 letter had been based—were inaccurate or incomplete.

79. Defendant Payne denies the allegations in this paragraph.

80. Defendant Payne admits that he sent a letter to President Mirziyoyev and Ambassador Sidikov in August 2024 in which he retracted his April 10, 2024, letter and expressed concerns about Mkrtchyan based on information that had come to his attention after the April letter. Payne admits that he sent this letter to the President at his Embassy and personal email addresses and that he spoke with the President by telephone regarding the letter. Payne denies that he acted at Fleming's or UCG's "direction," denies that the statements in his August 2024 letter were false or defamatory, and denies the remaining characterizations in this paragraph.

81. Defendant Payne admits that he communicated with Fleming around the time of his August 2024 letter. Payne denies that he acted at the "direction" of Fleming or Straife in sending the letter. Payne drafted the letter based on his own assessment of the circumstances.

82. The letter referenced in this paragraph speaks for itself. Defendant Payne denies that the contents of the letter were false or defamatory. The statements in the letter reflected Payne's good-faith understanding based on information available to him.

83. The letter referenced in this paragraph speaks for itself. Defendant Payne denies that the contents were false or defamatory.

84. The letter referenced in this paragraph speaks for itself. Defendant Payne denies any characterizations inconsistent with the letter's actual contents.

85. Defendant Payne admits that he communicated with the Uzbek President regarding his August 2024 letter. Payne denies the characterization that the statements in the letter were false.

86. Defendant Payne admits that he requested confidentiality for his August 2024 letter. Payne states that the request for confidentiality was consistent with standard diplomatic practice and was not made to "conceal" anything from Plaintiffs.

87. Defendant Payne admits that he communicated with Ambassador Sidikov and with Fleming after sending the August 2024 letter. Payne denies the remaining characterizations in this paragraph.

### 5. Defendants wrongfully publicize their allegations further

88. Defendant Payne denies the allegations in this paragraph.

89. Defendant Payne denies the allegations in this paragraph.

90. Defendant Payne denies the allegations in this paragraph.

91. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the London Post and therefore denies them.

92. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

93. The document referenced speaks for itself. Defendant Payne denies that he caused or directed the publication of this article.

94. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

95. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Stirling and therefore denies them.

96. The document referenced speaks for itself. Defendant Payne denies that he caused or directed the publication of this content.

97. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

98. Defendant Payne admits that he communicated with a reporter at ICIJ and provided information and materials to that reporter. Payne denies that the information he provided was false or defamatory. The documents referenced speak for themselves. Payne denies the remaining characterizations in this paragraph.

99. The document referenced speaks for itself. Defendant Payne denies the characterizations in this paragraph.

100.    The document referenced speaks for itself.

101.    Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning public relations contacts and fees described in this paragraph and therefore denies them.

102.    Defendant Payne denies the allegations in this paragraph.

### 6. Fleming and Straife begin the payoff to Payne

103.    Defendant Payne denies the allegations in this paragraph, including the characterization that any transaction constituted a "payoff." Payne's business arrangements with

Fleming and others were legitimate commercial transactions unrelated to the allegations in this Complaint.

104.    Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Fleming's specific relationship with IPRI and therefore denies them. Fleming's website biography speaks for itself.

105.    Defendant Payne admits that he formed Team Eagle Consulting, LLC in Delaware on September 18, 2024. Payne admits that Team Eagle's primary business address is 633 Pennsylvania Avenue, N.W. in Washington, D.C. Payne denies the characterization of Team Eagle as a "shell company" created to hold a "payoff." Team Eagle was formed as a legitimate business entity. The FARA filings referenced speak for themselves.

106.    Defendant Payne admits that Team Eagle entered into a $1.5 million lobbying contract with IPRI and received an initial payment. Payne denies any characterization that this contract was a "payoff" or was related to the allegations in this Complaint. The contract reflects legitimate lobbying services.

107.    Defendant Payne admits that Team Eagle subcontracted a portion of the IPRI engagement to Hyperfocal Communications, LLC. The FARA filings referenced speak for themselves. Payne lacks knowledge or information sufficient to form a belief as to the truth of the specific allegations concerning the corporate relationship between Hyperfocal and Straife and therefore denies them.

108.    The press release referenced speaks for itself.

109.    Defendant Payne denies the allegations in this paragraph.

### E. Defendants knew that their defamatory statements against Mkrtchyan were false when they made them

110.     Defendant Payne denies the allegations in this paragraph. Payne did not know his statements were false and did not act with reckless disregard for their truth.

111.     Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Straife and Fleming and therefore denies them.

112.     Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Straife and Fleming and therefore denies them.

113.     The retraction letter referenced speaks for itself. Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations concerning the law firm's retraction.

114.     The retraction letter referenced speaks for itself.

115.     Defendant Payne denies the allegations in this paragraph.

116.     Defendant Payne denies the allegations in this paragraph. Payne's April 2024 letter was based on representations made to him by Mkrtchyan's agent, Aripov, during a period when Mkrtchyan was detained and Payne was performing high-stakes advocacy services at Aripov's urgent request. After Mkrtchyan's release, Payne received new information that caused him to question the accuracy of those prior representations, which led him to retract his April 2024 letter and to communicate his revised understanding to the Ambassador and President. Payne's change in position was the product of changed circumstances and new information, not malice.

117.     Defendant Payne denies the allegations in this paragraph.

### F. Defendants hid the Straife letter/report and Payne's letter

118.     Defendant Payne denies the allegations in this paragraph.

119.    Paragraph 119 contains legal conclusions to which no response is required. To the extent a response is required, Defendant Payne denies the allegations.

120.    Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the statute of limitations as applied to claims against Straife and Fleming and therefore denies them.

121.    Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning the conduct of Straife and Fleming and therefore denies them.

122.    Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Plaintiffs' relationship with and expectations of Straife and Fleming and therefore denies them.

123.    Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

124.    Paragraph 124 contains legal conclusions to which no response is required. To the extent a response is required, Defendant Payne denies the allegations.

125.    Defendant Payne admits that he communicated with Plaintiffs' counsel regarding the August 2024 letter. Payne denies the remaining allegations and characterizations.

126.    Paragraph 126 contains legal conclusions to which no response is required. To the extent a response is required, Defendant Payne denies the allegations.

127.    Paragraph 127 contains legal conclusions to which no response is required. To the extent a response is required, Defendant Payne denies the characterization of his conduct as "affirmative acts to fraudulently conceal." Payne admits that he requested confidential treatment of his August 2024 letter, which is standard diplomatic practice. Payne admits that he

communicated with Plaintiffs' counsel through his own counsel as described in the bullet points. Payne denies that those communications constituted fraudulent concealment and denies that any representations made through counsel were knowingly false. Payne's communications through counsel reflected his understanding at the time and were made in good faith.

128.    Defendant Payne denies the allegations in this paragraph.

129.    Paragraph 129 contains legal conclusions to which no response is required. To the extent a response is required, Defendant Payne denies the allegations.

### G. Mkrtchyan and Gor suffer over $1 billion in losses

130.    Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning Plaintiffs' contracts and business relationships and therefore denies them.

131.    Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

132.    Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

133.    Defendant Payne denies that Plaintiffs' business fortunes depended on Payne's conduct as alleged. Payne lacks knowledge or information sufficient to form a belief as to the remaining allegations and therefore denies them.

134.    Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

135.    Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

136.    Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them.

137.    Defendant Payne denies that he had actual knowledge of Plaintiffs' specific contracts as alleged and denies that he made knowingly false or defamatory statements. Payne denies the remaining allegations in this paragraph.

138.    Defendant Payne denies the allegations in this paragraph. The Complaint fails to identify any specific government official who received the allegedly defamatory statements and took action against Plaintiffs, or any specific company that was directed to cease doing business with Plaintiffs as a result of statements attributable to Payne.

139.    Defendant Payne denies the allegations in this paragraph. The Complaint's theory of "but for" causation is speculative and implausible, resting on an attenuated chain of unidentified intermediaries between Payne's letter and Plaintiffs' claimed losses. To the extent Plaintiffs suffered losses, those losses were caused by intervening and superseding actions of Uzbek government officials and other third parties, not by any conduct of Payne.

140.    Defendant Payne denies the allegations in this paragraph.

141.    Defendant Payne denies the allegations in this paragraph.

142.    Defendant Payne denies the allegations in this paragraph.

143.    Defendant Payne denies the allegations in this paragraph, including the assertion that Plaintiffs have lost over $1 billion as a proximate result of Payne's conduct.

144.    Defendant Payne denies the allegations in this paragraph and denies that any conduct evinced malice or its equivalent.

## CAUSES OF ACTION

## COUNT I: TORTIOUS INTERFERENCE WITH CONTRACT
### *(All Defendants)*

145.     Paragraph 145 incorporates prior allegations by reference. Defendant Payne denies the incorporated allegations to the extent previously denied herein.

146.     Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them. Payne further states that the Complaint fails to identify any specific contract with any specific counterparty that Payne allegedly knew about and intentionally interfered with.

147.     Defendant Payne denies the allegations in this paragraph. The Complaint fails to identify which specific contracts Payne allegedly knew about, when he learned of them, or how he intentionally procured their breach or non-performance.

148.     Defendant Payne denies the allegations in this paragraph. The Complaint fails to identify any specific contract that was breached, terminated, or not performed as a result of Payne's conduct, or any specific counterparty that took such action because of statements attributable to Payne.

149.     Defendant Payne denies the allegations in this paragraph.

150.     Defendant Payne denies the allegations in this paragraph. The Complaint fails to allege damages resulting from any specific breach or non-performance of any identified contract attributable to Payne's conduct.

## COUNT II: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE
### *(All Defendants)*

151.     Paragraph 151 incorporates prior allegations by reference. Defendant Payne denies the incorporated allegations to the extent previously denied herein.

152.    Defendant Payne lacks knowledge or information sufficient to form a belief as to the truth of the allegations and therefore denies them. The Complaint fails to identify any commercially reasonable business expectancy with sufficient specificity to support this claim.

153.    Defendant Payne denies the allegations in this paragraph.

154.    Defendant Payne denies the allegations in this paragraph. Plaintiffs' claimed business expectancies are entirely contingent on the continued exercise of favorable discretion by Uzbekistan's government, which is too speculative and attenuated to constitute a commercially reasonable expectancy.

155.    Defendant Payne denies the allegations in this paragraph.

156.    Defendant Payne denies the allegations in this paragraph. The Complaint fails to establish any direct and natural causal link between Payne's conduct and the loss of any specific business opportunity.

### COUNT III: DEFAMATION
*(All Defendants)*

157.    Paragraph 157 incorporates prior allegations by reference. Defendant Payne denies the incorporated allegations to the extent previously denied herein.

158.    Defendant Payne denies the allegations in this paragraph.

159.    Defendant Payne denies the allegations in this paragraph.

160.    Defendant Payne denies the allegations in this paragraph.

161.    Defendant Payne denies the allegations in this paragraph. To the extent the challenged statements concern non-party Uktam Aripov, they are not "of and concerning" Plaintiffs and cannot support a defamation claim.

162.    Defendant Payne denies the allegations in this paragraph. The Complaint fails to identify any specific third party other than the Uzbek President who received or was aware of the allegedly defamatory statements.

163.    Defendant Payne denies the allegations in this paragraph. Plaintiffs are limited-purpose public figures who must plead and prove actual malice. The Complaint fails to allege any specific, non-conclusory facts establishing that Payne knew his statements were false at the time they were made or acted with reckless disregard for their truth. Payne's change in position between April and August 2024 was based on new information, and the Complaint does not identify any specific information Payne allegedly possessed that contradicted the statements in his August 2024 letter.

164.    Defendant Payne denies the allegations in this paragraph.

165.    Defendant Payne denies the allegations in this paragraph.

## COUNT IV: INJURIOUS FALSEHOOD
### *(All Defendants)*

166.    Paragraph 166 incorporates prior allegations by reference. Defendant Payne denies the incorporated allegations to the extent previously denied herein.

167.    Defendant Payne denies the allegations in this paragraph. The allegedly defamatory statements attributed to Payne concern Mkrtchyan personally and do not constitute false statements about Plaintiffs' property, products, or commercial interests as required to state a claim for injurious falsehood.

168.    Defendant Payne denies the allegations in this paragraph.

169.    Defendant Payne denies the allegations in this paragraph.

170.    Defendant Payne denies the allegations in this paragraph.

171.    Defendant Payne denies the allegations in this paragraph. The Complaint fails to plead special damages with the particularity required by Federal Rule of Civil Procedure 9(g), as it does not identify any specific loss, contract, customer, or business opportunity lost as a direct and natural result of any statements attributable to Payne.

## COUNT V: CONSPIRACY
### *(All Defendants)*

172.    Paragraph 172 incorporates prior allegations by reference. Defendant Payne denies the incorporated allegations to the extent previously denied herein.

173.    Defendant Payne denies the allegations in this paragraph. Payne did not enter into any agreement to make false or defamatory statements about Plaintiffs. Civil conspiracy is not independently actionable and depends on the performance of an underlying tortious act; because Plaintiffs fail to state a claim for any underlying tort against Payne, their conspiracy claim likewise fails.

174.    Defendant Payne denies the allegations in this paragraph.

175.    Defendant Payne denies the allegations in this paragraph.

176.    Defendant Payne denies the allegations in this paragraph.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof on any issue for which Plaintiffs bear the burden, and reserving the right to amend or supplement these defenses as discovery proceeds and additional facts become known, Defendant Payne asserts the following affirmative defenses:

### First Affirmative Defense: Truth / Substantial Truth

The statements attributed to Defendant Payne were true or substantially true and therefore are not actionable. Payne's August 2024 letter reflected information that had come to his attention after his April 2024 letter, which caused him to question the accuracy of the representations previously made to him by Mkrtchyan's agent, Uktam Aripov, and upon which his April 2024 letter had been based.

### Second Affirmative Defense: Good Faith / Absence of Actual Malice

Defendant Payne's statements were made in good faith and without knowledge of their alleged falsity or reckless disregard for their truth. Payne's retraction of his April 2024 letter was motivated by his good-faith reassessment of the situation based on new information, not by malice toward Plaintiffs. To the extent any heightened fault standard applies, Plaintiffs cannot demonstrate that Payne acted with actual malice.

### Third Affirmative Defense: Public Figure Status / Failure to Plead Actual Malice

Plaintiffs are limited-purpose public figures with respect to the controversy at issue in this case—namely, their relationship with the Government of Uzbekistan, Mkrtchyan's detention by Uzbek authorities, and the rivalry between Mkrtchyan and Shadmanov. This controversy predated the allegedly defamatory statements, and Plaintiffs played a central role in it, including by causing multiple letters to be submitted to Uzbekistan's President and Ambassador. As limited-purpose public figures, Plaintiffs must plead and prove actual malice with convincing clarity, and the Complaint fails to allege any specific, non-conclusory facts establishing that Payne knew his

statements were false or acted with reckless disregard for their truth at the time they were published.

### Fourth Affirmative Defense: Qualified Privilege / Common Interest

Defendant Payne's communications to the Uzbek Ambassador and President were protected by a qualified privilege. The communications were made to government officials with a legitimate interest in the subject matter—including the conduct of individuals and entities operating within their jurisdiction—and Payne had a corresponding interest and duty to communicate his revised understanding of the facts. Payne's communications were made without actual malice and did not exceed the scope of any applicable privilege.

### Fifth Affirmative Defense: Opinion / Non-Actionable Statements

Some or all of the statements attributed to Defendant Payne constitute protected expressions of opinion, rhetorical characterization, or are otherwise not capable of being proven true or false, and therefore are not actionable as defamation or injurious falsehood.

### Sixth Affirmative Defense: Statute of Limitations

Some or all of Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations.

### Seventh Affirmative Defense: Absence of Proximate Causation / Intervening Cause

Plaintiffs' alleged injuries, if any, were not proximately caused by Defendant Payne's conduct. The Complaint's theory of causation rests on an attenuated and speculative chain spanning from Payne's letter to the Uzbek President, through unidentified intermediaries, to unnamed government officials in Uzbekistan, who then allegedly directed unspecified companies to take unspecified actions against Plaintiffs' interests. Any losses Plaintiffs suffered were caused by independent, intervening, and superseding acts of third parties—including actions taken by

Uzbek government officials, by Shadmanov and UCG, and by other non-party actors over whom Payne had no control. The chain of causation between Payne's communications and Plaintiffs' claimed $1 billion in losses is too attenuated and speculative to support liability.

### Eighth Affirmative Defense: Failure to Identify Specific Contracts or Damages

Plaintiffs' tortious interference claims fail because the Complaint does not identify any specific contract that Payne allegedly knew about and intentionally interfered with, any specific counterparty that breached, terminated, or failed to perform a contract because of statements attributable to Payne, or any specific damages resulting from the breach or non-performance of any identified contract. The Complaint's vague references to contracts with BASF, CITIC, and CC7 do not identify which specific contracts were allegedly interfered with or which companies ceased doing business with Plaintiffs because of Payne's conduct.

### Ninth Affirmative Defense: Failure to Plead Special Damages (Injurious Falsehood)

Plaintiffs' injurious falsehood claim (Count IV) fails because the Complaint does not plead special damages with the particularity required by Federal Rule of Civil Procedure 9(g). Plaintiffs have not identified any specific loss, contract, customer, or business opportunity that was lost as the direct and natural result of any statements attributable to Payne. Additionally, the statements attributed to Payne concern Mkrtchyan personally and do not constitute false statements about Plaintiffs' property, products, or commercial interests as required to state a claim for injurious falsehood.

### Tenth Affirmative Defense: No Conspiracy

Defendant Payne did not enter into any agreement or conspiracy with any other Defendant or non-party to commit any of the tortious acts alleged in the Complaint. Payne acted independently in sending his August 2024 letter based on his own assessment of the circumstances.

*Eleventh Affirmative Defense: Failure to State a Claim*

The Complaint fails to state a claim upon which relief can be granted as to Defendant Payne.

*Twelfth Affirmative Defense: Failure to Mitigate Damages*

Plaintiffs failed to take reasonable steps to mitigate their alleged damages, and any recovery should be reduced accordingly.

*Thirteenth Affirmative Defense: Unclean Hands / In Pari Delicto*

Plaintiffs' claims are barred or limited by the doctrines of unclean hands and in pari delicto to the extent Plaintiffs or their agents engaged in inequitable, fraudulent, or wrongful conduct relating to the subject matter of this action, including but not limited to misrepresentations made by Mkrtchyan's agent Aripov to Payne concerning the circumstances of Mkrtchyan's detention and related matters.

*Fourteenth Affirmative Defense: Petitioning Activity / First Amendment*

To the extent Defendant Payne's communications with the Uzbek President and other government officials constitute petitioning activity or the expression of views on matters of public concern, they are protected by the First Amendment to the United States Constitution and cannot form the basis for tort liability.

*Fifteenth Affirmative Defense: Consent / Assumption of Risk*

Plaintiffs, through their agent Aripov, invited, encouraged, and directed Payne to engage with the Uzbek President and senior government officials regarding matters involving Mkrtchyan. Having enlisted Payne's involvement with these officials, Plaintiffs assumed the risk that Payne would exercise his independent judgment in subsequent communications with those same officials.

***Sixteenth Affirmative Defense: Statements Not "Of and Concerning" Plaintiffs***

To the extent Plaintiffs' defamation and injurious falsehood claims are premised on allegedly false statements concerning non-party Uktam Aripov, those statements are not "of and concerning" Plaintiffs and cannot support claims by Plaintiffs for defamation or injurious falsehood.

***Seventeenth Affirmative Defense: Reservation of Rights***

Defendant Payne reserves the right to amend this Answer and to assert additional affirmative defenses as discovery proceeds and additional facts become known.

**JURY DEMAND**

Defendant demands a trial by jury of all issues so triable.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Defendant Stephen Prentiss Payne respectfully requests that this Court:

a.  Dismiss the Complaint in its entirety as against Defendant Payne with prejudice;

b.  Enter judgment in favor of Defendant Payne on all counts;

c.  Award Defendant Payne his costs of suit, including reasonable attorneys' fees to the extent permitted by law;

d.  Grant such other and further relief as this Court deems just and proper.

Dated: February 19, 2026

Respectfully submitted,

*/s/ Michael J. Wynne\**

Michael J. Wynne
TX Bar No. 00785289
GREGOR WYNNE ARNEY, PLLC
4265 San Felipe, Suite 700
Houston, Texas 77027
Direct: (281) 450-7403
Main: (832) 390-2644
mwynne@gwafirm.com

Jason H. Ehrenberg
D.C. Bar No. 469077
HOLON LAW GROUP LLP
1178 Broadway, 3rd Floor #4503
New York, New York 10001
Direct: 202.888.3773
Main:   866.372.0726
jehrenberg@holonlaw.com

ATTORNEYS FOR DEFENDANT
STEPHEN PRENTISS PAYNE

*\*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on February 19, 2026, I electronically filed this document with the

Clerk of the Court of the U.S. District Court of the District of Columbia by using the CM/ECF

system, which will automatically generate and serve notices of this filing to all counsel of record.

*/s/ Michael J. Wynne\**

Michael J. Wynne

*\*Admitted Pro Hac Vice*