**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

———————————————————————— )
                                                                            )
**GOR INVESTMENT LIMITED,** *et al.*,                )
                                                                            )
     *Plaintiffs*                                        )
                                                                            )
**v.**                                                                    )     **Civil Action No.: 1:25-CV-04506**
                                                                            )
**STRAIFE LLC,** *et al.*,                                    )
                                                                            )
     **Defendants**                                     )
                                                                            )
———————————————————————— )

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS
JOSEPH PATRICK FLEMING'S AND STRAIFE LLC'S
MOTION TO DISMISS THE COMPLAINT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTS AS ALLEGED ......................................................................................................... 3

ARGUMENT ........................................................................................................................ 9

    I.        The Complaint Should Be Dismissed for Lack of Personal Jurisdiction ............... 9

        A.    This Court Lacks General Jurisdiction Over Defendants Fleming and Straife LLC. .................................................................................................................. 10

        B.    The Court Lacks Specific Jurisdiction over Defendants Fleming and Straife LLC under the D.C. Long-Arm Statute and the Due Process Clause. .......................... 11

        1.    The Court Lacks Jurisdiction Under D.C. Code § 13-423(a)(4) Because the Complaint Fails to Allege Injury to Plaintiffs Within the District of Columbia, or a "Plus Factor" Connecting Defendants to the District. ................................................................. 12

        2.    The Court Lacks Jurisdiction Under Plaintiffs' Alternative Theory Invoking D.C. Code § 13-423(a)(1) .......................................................................................................... 20

        3.    The Complaint Fails to Establish that the Exercise of Personal Jurisdiction  Is Appropriate Under the Due Process Clause .................................................................... 23

        4.    Personal Jurisdiction Is Not Proper Under a Conspiracy Jurisdiction Theory ..... 26

    II.        Each Count of the Complaint Should Be Dismissed for Failure to State a Claim 27

        A.    The Complaint Fails to State a Claim for Tortious Interference with Contract.... 28

        1.    The Complaint Fails to Allege Any Specific Contract That Was Interfered With. 28

        2.    The Complaint Fails to Allege Damages Resulting from Any Breach or Non-Performance of Any Contract. .......................................................................................... 30

        3.    The Complaint Fails to Plausibly Allege A Direct and Natural Causal Link Between Straife Defendants' Alleged Conduct and Plaintiffs' Claimed Harms. ............. 30

        B.    Plaintiffs' Claim for Tortious Interference with Prospective Business Advantage Fails to Allege a Knowing and Intentional Interference with a Commercially Reasonable Business Expectancy Caused by the Straife Defendants. .................. 32

        C.    The Complaint Fails to State a Claim for Injurious Falsehood. .......................... 35

        1.    The Complaint Fails to Allege Any False Statements About Plaintiffs' Business Interests. ............................................................................................................................ 35

        2.    The Complaint Fails to Plead Special Damages, As Required to State a Claim for Injurious Falsehood .......................................................................................................... 36

        D.    Plaintiffs' Defamation Claim Must Be Dismissed Because the Complaint Fails to Allege Any Facts Supporting that Defendants Acted with Actual Malice. .......... 38

i

1.    Plaintiffs Are Public Figures for Purposes of Their Defamation Claim............... 38

2.    The Complaint Fails to Allege Any Facts Supporting that Defendants Knew the Allegedly Defamatory Statements Were False or Were Reckless as to their Truth. ........ 40

E.    Dismissal of the Underlying Tort Claims Requires Dismissal of Plaintiffs' Civil Conspiracy Claim................................................................................................ 43

CONCLUSION.................................................................................................................. 44

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*3M Co. v. Boulter,
  842 F. Supp. 2d 85 (D.D.C. 2012) .......................................................................27, 32, 36, 37

AGS Int'l Servs. SA v. Newmont USA Ltd.,
  346 F. Supp. 2d 64 (D.D.C. 2004), *abrogated on other grounds as recognized*
  *in Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7 (D.D.C.
  2014) ..........................................................................................................................................24

Akhmetshin v. Browder,
  275 A.3d 290 (D.C. 2022) ..........................................................................................21, 22

*Akhmetshin v. Browder,
  761 F. Supp. 3d 1 (D.D.C. 2024) ..............................................................................23, 25, 26

Art Metal-U.S.A., Inc. v. United States,
  753 F.2d 1151 (D.C. Cir. 1985) .................................................................................35

Ashcroft v. Iqbal,
  556 U.S. 662 (2009) .......................................................................................................3, 27

Bauman v. Butowsky,
  377 F. Supp. 3d 1 (D.D.C. 2019) ..........................................................................10, 11, 19

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) .......................................................................................................3, 27

Bristol-Myers Squibb Co. v. Superior Ct. of Ca.,
  582 U.S. 255 (2017) ....................................................................................................23, 24

Brown v. Carr,
  503 A.2d 1241 (D.C. Cir. 1986) ..............................................................................32

Browning v. Clinton,
  292 F.3d 235 (D.C. Cir. 2002) ...................................................................................38

Burger King Corp. v. Rudzewicz,
  471 U.S. 462 (1985) .........................................................................................................23

*Burman v. Phoenix Worldwide Indus., Inc.,
  437 F. Supp. 2d 142 (D.D.C. 2006) ........................................................................18, 20

Calder v. Jones,
  465 U.S. 783 (1984) .........................................................................................................26

*Carr v. Brown,
    395 A.2d 79 (D.C. 1978) ...........................................................................................33, 34

Casco Marina Devl., L.L.C. v. D.C. Redevelopment Land Agency,
    834 A.2d 77 (D.C. 2003) ....................................................................................28, 30, 32

Chen v. Bell-Smith,
    768 F. Supp. 2d 121 (D.D.C. 2011) ...............................................................................35

Command Consulting Grp., LLC v. Neuraliq, Inc.,
    623 F. Supp. 2d 49 (D.D.C. 2009) .................................................................................33

Couch v. Verizon Commc'ns, Inc.,
    105 F.4th 425 (D.C. Cir. 2024) ...............................................................................40, 42

Crane v. Carr,
    814 F.2d 758 (D.C. Cir. 1987) ................................................................................16, 17

D'Onofrio v. SFX Sports Grp., Inc.,
    534 F. Supp. 2d 86 (D.D.C. 2009) ...........................................................................10, 12

Daimler AG v. Bauman,
    571 U.S. 117 (2014) ................................................................................................10, 11

Democratic State Comm. of D.C. v. Bebchik,
    706 A.2d 569 (D.C. 1998) ..............................................................................................34

*Deripaska v. Assoc. Press,
    282 F. Supp. 3d 133 (D.D.C. 2017) .........................................................38, 39, 40, 43

Dickson v. United States,
    831 F. Supp. 893 (D.D.C. 1993) ...................................................................................19

Doe v. Benoit,
    No. 19-cv-1253 (DLF), 2020 WL 11885578 (D.D.C. Jun. 29, 2020) ....................................19

Dove v. United States,
    Civ. A. No. 86–0065–LFO, 1987 WL 18739 (D.D.C. Oct. 9, 1987) ....................................22

Duarte v. Noal,
    190 F. Supp. 3d 8 (D.D.C. 2016) ..................................................................................10

Env't Rsch. Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,
    355 A.2d 808 (D.C. 1976) ..............................................................................................22

Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.,
    749 A.2d 724 (D.C. 2000) ..............................................................................................44

*Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*,
  638 F. Supp. 2d 1 (D.D.C. 2009) ..................................................................10, 12, 13, 14, 22

*First Chicago Int'l v. United Exch. Co.*,
  836 F.2d 1375 (D.C. Cir. 1988) ..................................................................................10

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
  592 U.S. 351 (2021)....................................................................................................23

*Forras v. Rauf*,
  812 F.3d 1102 (D.C. Cir. 2016) ..............................................................................12, 20

*Fridman v. Orbis Bus. Intel. Ltd.*,
  229 A.3d 494 (D.C. 2020) ............................................................................................39

*Gather Workspaces LLC v. Gathering Spot, LLC*,
  Civ. A. No. 19-2669 (RC), 2020 WL 6118439 (D.D.C. Oct. 16, 2020)................................20

*Globe Metallurgical, Inc. v. Rima Indus. S.A.*,
  177 F. Supp. 3d 317 (D.D.C. 2016) ...............................................................................26

*Gov. Relations Inc. v. Howe*,
  No. Civ.A. 05–1081 CKK, 2007 WL 201264 (D.D.C. Jan. 24, 2007)....................................28

*Groop Internet Platform Inc. v. Psychotherapy Action Network*,
  Civ. A. No. 2020 WL 353861, 2020 WL 353861 (D.D.C. Jan. 21, 2020) ............................16

*GTE New Media Servs. v. BellSouth Corp.*,
  199 F.3d 1343 (D.C. Cir. 2000) .................................................................................14, 20

*Helmer v. Doletskaya*,
  393 F.3d 201 (D.C. Cir. 2004) ..................................................................................9, 14

*Hettinga v. United States*,
  677 F.3d 471 (D.C. Cir. 2012) ..................................................................................27, 33

*Hourani v. Psybersolutions LLC*,
  164 F. Supp. 3d 128 (D.D.C. 2016), *aff'd*, 690 F. App'x 1 (D.C. Cir. 2017)
  ..............................................................................................................9, 10, 15, 23

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310 (1945)....................................................................................................23

*Klayman v. Porter*,
  Civ. A. No. 24-2853(RBW), 2026 WL 320191 (D.D.C. Feb. 6, 2026)..................................30

*KLEO AG v. Rivada Networks, Inc.*,
  148 F.4th 741 (D.C. Cir. 2025) ......................................................................................38

*Kroger v. Legalbill.com LLC*,
    No. CIV A 04-2189 ESH, 2005 WL 4908968 (D.D.C. Apr. 7, 2005) ...................................11

*Lewy v. S. Poverty Law Ctr.*,
    723 F. Supp. 2d 116 (D.D.C. 2010) ...................................................................3, 16, 17, 18, 20

*Lohrenz v. Donnelly*,
    350 F.3d 1272 (D.C. Cir. 2003) ...................................................................................40, 42

*McFarlane v. Esquire Magazine*,
    74 F.3d 1296 (D.C. Cir. 1996) ...................................................................................20

*Moncrief v. Lexington Herald–Leader Co.*,
    807 F.2d 217 (D.C. Cir. 1986) ...................................................................................20

*Newmyer v. Sidwell Friends Sch.*
    128 A.3d 1023 (D.C. 2015) ...................................................................................31, 32

*Nyambal v. Alliedbarton Sec.. Servs., LLC*,
    153 F. Supp. 3d 309 (D.D.C. 2016), *reconsideration granted in part on other*
    *grounds*, 344 F. Supp. 3d 183 (D.D.C. 2018) ...................................................28, 29

*Parisi v. Sinclair*,
    845 F. Supp. 2d 215 (D.D.C. 2012) ...................................................................................42

*Passantino v. Weissmann*,
    752 F. Supp. 3d 168 (D.D.C. 2024) ...................................................................................36, 37

*Paul v. Howard Univ.*,
    754 A.2d 297 (D.C. 2000) ...................................................................................28

*Poss v. Kern*,
    No. 23-cv-2199 (DLF) ...................................................................................15

*Precision Contracting Sols., LP v. ANGI Homeservices, Inc.*,
    415 F. Supp. 3d 113 (D.D.C. 2019) ...................................................................................27, 34

*Roadget Bus. PTE, Ltd. v. PDD Holdings Inc.*,
    Civ. A. No. 2026 WL 44864, 2026 WL 44864 (D.D.C. Jan. 7, 2026) ...................................18

*Rusesabagina v. Republic of Rwanda*,
    Civ. Case No. 22-469 (RJL), 2023 WL 2562692 (D.D.C. Mar. 16, 2023) ...........................25

*Sabre Int'l Security v. Torres Advanced Enter. Sols., Inc.*,
    820 F. Supp. 2d 62 (D.D.C. 2011) ...................................................................................33

*Saha v. Teladoc Health Med. Grp., P.A.*,
    Case No. 23-cv-3188 (JMC), 2025 WL 2779977 (D.D.C. Sep. 30, 2025) ...........................29

*Sapieyevski v. Live Nation Worldwide, Inc.*,
Civ. A. No. 18-cv-830 (TJK), 2020 WL 4432119 (D.D.C. July 31, 2020) ...........................18

*Saucier v. Countrywide Home Loans*,
64 A.3d 428 (D.C. 2013) .........................................................................................43

*Schoen v. Wash. Post*,
246 F.2d 670 (D.C. Cir. 1957) .................................................................................38

*Seiferth v. Helicopteros Atuneros, Inc.*,
472 F.3d 266 (5th Cir. 2006) ...................................................................................11

*Shapley v. Lowell*,
Civ. A. No. 24-2646 (RJL), 2025 WL 2935970 (D.D.C. Oct. 16, 2026) ...............................40

*Sharpe v. Am. Acad. of Actuaries*,
285 F. Supp. 3d 285 (D.D.C. 2018) ..........................................................................30

*Smartmatic USA Corp. v. Powell*,
Civ. A. No. 1:21-cv-02995 (CJN), 2023 WL 3619346 (D.D.C. May 24, 2023) ...................11

*Tah v. Global Witness Publ'n, Inc.*,
991 F.3d 231 (D.C. Cir. 2021) .................................................................................41

*Tavoulareas v. Comnas*,
720 F.2d 192 (D.C. Cir. 1983) .................................................................................18

*Toumazou v. Turkish Republic of N. Cyprus*,
71 F. Supp. 3d 7 (D.D.C. 2014) ..............................................................................21

*Trilogy Fed., LLC v. CivitasDX LLC*,
Civ. A. Nos. 24-2713, 25-792, 2025 WL 2651240 (D.D.C. Sept. 16, 2025) ...................30, 31

*US Dominion, Inc. v. Byrne*,
600 F. Supp. 3d 24 (D.D.C. 2022) ...........................................................................42

*Von Kahl v. Bur. of Nat'l Affairs, Inc.*,
934 F. Supp. 2d 204 (D.D.C. 2013) ..........................................................................39

*Waldbaum v. Fairchild Publ'ns, Inc.*,
627 F.2d 1287 (D.C. Cir. 1980) ...............................................................................39

*Wash. Metro. Area Transit Auth. v. Quick Serve Foods, Inc.*,
Civ. Nos. 04-838(RCL), 04-687(RCL), 2006 WL 1147933 (D.D.C. Apr. 28,
2006) ...................................................................................................................33

*Whetstone Candy Co. v. Nat'l Consumers League*,
360 F. Supp. 2d 77 (D.D.C. 2004) ..............................................................14, 35, 36, 37

*World-Wide Volkswagen Corp. v. Woodson*,
     444 U.S. 286 (1980).................................................................................23

*Xereas v. Heiss*,
     933 F. Supp. 2d 1 (D.D.C. 2013)...........................................................34

*Zavadovsky v. Rabl*,
     Civ. A. No. 24-1997 (RC), 2025 WL 2466024 (D.D.C. Aug. 27, 2025) ..............................16

*Zimmerman v. Al Jazeera Am., LLC*,
     246 F. Supp. 3d 257 (D.D.C. 2017)........................................................42

**Statutes**

D.C. Code § 13-422 ...................................................................................11

D.C. Code § 13-423(a)...................................2, 6, 11, 12, 13, 14, 16, 17, 18, 20, 21, 22

**Rules**

Fed. R. Civ. P. 12(b) ...........................................................1, 2, 3, 27, 32, 33

**INTRODUCTION**

Plaintiffs' Complaint should be dismissed for two reasons: first, lack of personal jurisdiction over Defendants Joseph Fleming and Straife LLC ("Straife Defendants"), and second, because the Complaint fails to allege a legally valid claim for relief under any of its five pleaded causes of action.

Regarding the Straife Defendants' motion under Federal Rule of Civil Procedure 12(b)(2), the Complaint's allegations of defamation, tortious interference, injurious falsehood and conspiracy, at best, describe a vague, unspecific and tenuous link to the District of Columbia insufficient to support the exercise of personal jurisdiction over them by this Court. None of the parties resides in the District of Columbia. Straife Defendants are residents of Texas. Plaintiff Mkrtchyan, the founder and shareholder of Plaintiff Gor, is allegedly an Armenian and Cypriot citizen and legal resident of Latvia. Gor is allegedly organized and headquartered in the United Kingdom. There is no allegation that Mkrtchyan or Gor have *ever* had any contacts with the District of Columbia.

More importantly, Plaintiffs' alleged injuries consist entirely of harms to their alleged business relationships, reputation and standing with Uzbekistan's government and related contracts with non-U.S. companies operating in Uzbekistan or in other foreign countries. The Complaint does not allege that either Fleming or Straife LLC took any action in the District of Columbia related to Plaintiffs' claims. The only asserted connection linking this case to the District of Columbia is that an Indiana law firm sent an allegedly false report prepared by the Straife Defendants, via email, to the Ambassador of Uzbekistan at his official embassy email address, under a cover letter addressing the correspondence to the President of Uzbekistan. Uzbekistan's embassy, like those of more than one hundred other countries, is in the District of Columbia.

1

The Complaint's allegations are thus insufficient to support this Court's exercise of personal jurisdiction over the Defendants. Plaintiffs fail to establish a basis for specific jurisdiction under D.C. Code § 13-423(a)(4) of the long-arm statute, principally because the Complaint fails to allege any cognizable injury to Plaintiffs within the District of Columbia. Plaintiffs similarly fail to establish a basis for jurisdiction under D.C. Code section 13-423(a)(1), because the Complaint fails to establish that Defendants "transacted business" in the District or that Plaintiffs' claims arise from such transaction of business.

Even if Plaintiffs could satisfy the requirements for specific jurisdiction under the District's long-arm statute, the Court's exercise of personal jurisdiction would violate due process. Among other reasons, the Complaint fails to establish that Defendants "expressly aimed" their conduct at the District, where none of the Plaintiffs has any presence and the focal point of the alleged harm to Plaintiffs is alleged to be targeted at and occurred exclusively in Uzbekistan.

Under Federal Rule of Civil Procedure 12(b)(6), Plaintiffs' Complaint should be dismissed, because it fails to state a claim for any of the five counts asserted. Plaintiffs' claims rest on a speculative and implausible causal chain. But the Complaint is bereft of any well-pled facts showing a connection between the allegedly false statements sent to the Ambassador, followed by alleged but unspecified acts of multiple layers of unidentified persons, allegedly resulting in claimed but unspecified harms to Plaintiffs' business interests in Uzbekistan. Such vague and attenuated theories fail to satisfy the pleading standards under the Federal Rules that apply to Plaintiffs' tortious interference claims (Counts I-II); let alone the heightened standard for pleading causation under Rule 9(g) that applies to Plaintiffs' injurious falsehood claim (Count IV). The latter claim must be dismissed for the additional reason that Plaintiffs fail to allege any false

statements by Straife Defendants about Plaintiffs' business interests, as opposed to Plaintiff Mkrtchyan personally.

Furthermore, Plaintiffs' tortious interference claims must be dismissed for the additional reasons that Plaintiffs fail to allege any specific contracts that were breached or otherwise interfered with, or to identify a commercially reasonable business expectancy, as required to plead each claim. Plaintiffs' defamation claim (Count III) must also be dismissed, because the Complaint fails to plead any non-conclusory allegations supported by specific facts showing that Straife Defendants knew the alleged statements were false at the time of publication. Finally, dismissal of Plaintiffs' underlying tort claims mandates dismissal of the civil conspiracy count (Count V).

## **FACTS AS ALLEGED[1]**

This case arises from allegedly false statements in a single document that Defendants Straife LLC and Joseph Fleming (collectively, the "Straife Defendants") purportedly authored and caused to be sent to the Ambassador of Uzbekistan, and a second letter allegedly sent to the Ambassador by Co-Defendant Payne. Compl. ¶¶ 1, 3, 4. Before any of the alleged misconduct by Straife Defendants occurred, Plaintiffs allege that Plaintiff Mkrtchyan was the victim of a plot by Mkrtchyan's rival, Ulugbek Shadmanov, an Uzbekistani business magnate, to orchestrate Mkrtchyan's three-month imprisonment at the hands of Uzbekistan's government. *Id.* ¶ 1-2.

---

[1]    Straife Defendants dispute many of the allegations in the Complaint. For purposes of their Rule 12(b)(6) motion, Straife Defendants must accept Plaintiff's factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). With respect to Defendants' Rule 12(b)(2) Motion, however, "the Court need not treat all of a plaintiff's allegations as true when determining whether personal jurisdiction exists over a defendant," although factual discrepancies must be resolved in favor of the plaintiffs. *Lewy v. S. Poverty Law Ctr.*, 723 F. Supp. 2d 116, 119 (D.D.C. 2010).

Plaintiffs allege they had been clients of Straife Defendants since 2022, who helped "advise[] on Mkrtchyan's wrongful detention in early 2024," among other matters, but that this relationship had ended by the time of Mkrchyan's release by Uzbekistan's government on April 12, 2024. *Id.* ¶¶ 3, 59-60. The Complaint alleges that Straife Defendants later turned against Plaintiffs to work for Shadmanov's company, United Cement Group (UCG).

As part of this alleged plot, Defendants are said to have collected alleged false information about Mkrtchyan, included that information in an unsigned report, and then recruited an intermediary to send the allegedly false report to the Ambassador of Uzbekistan. *Id.* ¶¶ 64, 73-77. The report was allegedly sent via email to the Ambassador, under a cover letter addressed to the President of Uzbekistan. *Id.* ¶ 77 & Ex 2. This report stated that Mkrtchyan had ties to Russian criminal organizations and had engaged in other corrupt behavior. The intent behind sending the report to the President of Uzbekistan was allegedly to blacken Plaintiff's reputation and destroy Plaintiffs' business interests in Uzbekistan. *Id.* ¶¶ 5-6, 61, 65-66.

The Complaint alleges that Straife Defendants knew that the allegedly false statements in the report were untrue, or were reckless as to the statements' truth, based on their prior work for Mkrtchyan and Gor. *Id.* ¶¶ 66, 71. The Complaint also alleges that Straife Defendants conducted due diligence concerning the Defendants before taking them on as clients in 2022, and that this due diligence "found nothing of concern." *Id.* ¶ 48. The Complaint does not identify any specific information allegedly learned by Straife Defendants during their prior work for Plaintiffs contradicting any of the complained-of statements in the report.

The Complaint alleges that Plaintiffs had various business projects in Uzbekistan that they pursued "with the Uzbek government's support," *id.* ¶ 132, and that their projects "rely on cooperation with the Uzbek government and large international corporations." *Id.* ¶ 133. The

Complaint identifies three corporations operating in Uzbekistan – BASF, CC7 and CITIC – each of which Plaintiffs allege they entered into multiple contracts with.  *Id.* ¶ 134-135.  Plaintiffs do not allege whether any contracts with these three companies received "support" from the Uzbekistani government, or identify the nature of any such support.  The Complaint alleges that one company, CITIC, informed Uzbekistan's President that CITIC was "ready" to invest an additional $1.5 billion in its project, but does not allege when CITIC made this statement, whether it ultimately followed through with the investment, or if not, why not.  *Id.* ¶ 135.

The Complaint alleges that, because of the allegedly false statements made to the Ambassador, other unnamed Uzbekistani officials withdrew government support for Plaintiffs' business activities in Uzbekistan, and directed "some of the above-referenced companies"[2] to halt working with the Plaintiffs there, but the Complaint does not identify which companies allegedly received these directives or ceased dealing with Plaintiffs as a result.  The Complaint alleges that this withdrawal of government support caused counterparties to terminate existing contracts, cease performing, or refuse to sign further contracts with the Plaintiffs, but does not identify any specific contracts that were breached, terminated, or otherwise not performed.  *Id.* ¶¶ 138-139.

Based on these allegations, the Complaint asserts five causes of action against all Defendants for Tortious Interference with Contract (Count I), Tortious Interference with Prospective Business Relations (Count II), Defamation (Count III), Injurious Falsehood (Count IV), and Civil Conspiracy (Count V).

---

[2] The reference to "some of the above-referenced companies," *Id*. ¶ 138 is vague, because prior to that point, the Complaint had referenced both the three named companies as well as other unspecified companies.

## JURISDICTIONAL ALLEGATIONS

Plaintiff Mkrtchyan is a citizen of Armenia and Cyprus and a legal resident of Latvia. Compl. ¶ 11. Mkrtchyan's businesses are "primarily located in the United Kingdom, Switzerland, Uzbekistan, and Latvia." *Id.* ¶ 28. Plaintiff Gor is organized under the laws of England and Wales with its principal place of business in the United Kingdom. *Id.* ¶ 12. Defendant Fleming is a citizen and resident of Texas. *Id.* ¶ 14. Defendant Straife LLC is a Texas limited liability company with its principal place of business in Houston, Texas. *Id.* ¶ 13.

The Complaint alleges that this Court has specific personal jurisdiction over Defendants Fleming and Straife LLC under the District's long-arm statue, and that such jurisdiction comports with due process. The Complaint pleads two provisions of the long-arm statute as alternative bases for the Court's exercise of jurisdiction:

> [T]his Court has personal jurisdiction over all Defendants . . . because all Defendants would be subject to jurisdiction in the District under D.C. Code § 13-423(a), which states that "[a] District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."

Compl. ¶ 18 (quoting D.C. Code § 13-423(a)(4)).

> Moreover, and in the alternative, this Court may exercise jurisdiction because Defendants "transact[ed] … business in the District of Columbia."

*Id.* (quoting D.C. Code § 13-423(a)(1)).

Plaintiffs allege that Defendants Fleming and Straife LLC caused tortious injury to the Plaintiffs in District by "drafting, approving, sending, and publishing false, defamatory, and disparaging statements about Plaintiffs to recipients in the District for the specific purpose and

with the reasonably foreseeable effect of causing tortious injury to Plaintiffs in the District.  Compl. ¶ 19.

The specific acts alleged by the Plaintiffs as to Defendants Fleming and Straife are:

- Defendants prepared an unsigned investigative report and caused it to be transmitted to the Uzbekistani Ambassador to the United States along with an accompanying cover letter.  *Id.* ¶ 20.[3]  Although the report was allegedly sent to the Uzbekistani Amb[assador] in D.C. via email, the cover letter addressed the correspondence to the President of Uzbekistan.  *Id.* Ex. 2.

- Defendants "targeted Plaintiffs' relationships and reputations with foreign government officials and institutions in the District, including the Uzbeki Ambassador and Embassy." *Id.* ¶ 20.  The Complaint does not identify any foreign government officials or institutions that were allegedly targeted, other than the Uzbekistani Ambassador.

- Defendants "caused paid content, blog posts, and articles to be published in the District that ostensibly corroborate their false and defamatory claims, with the intent that the Ambassador and his staff would read and act upon them." *Id.* ¶ 20.  The only specific publications identified by the Complaint are two internet posts described in ¶¶ 91-97.  Neither publication is alleged to be U.S.-based, nor does the Complaint provide any fact(s) demonstrating that the posts were published in the District.  Further, the Complaint does not allege any facts setting forth how Straife Defendants allegedly caused these "articles, blog posts, and other paid content" to be published at all, or any

---

[3]    The letter and report are attached to the Complaint as Exhibit 2. Although Plaintiffs allege that Defendants caused it to be sent to the Uzbekistani Ambassador via the Indiana-based law firm Bose McKinney & Evans LLP, the retraction letter, attached to the Complaint as Exhibit 7, states that "[t]he letter and report were sent at the request of . . . United Cement Group (UCG)."

facts linking Straife Defendants to either publication.  To the extent the Complaint alleges that there were additional such publications, it does not identify them.

Plaintiffs also allege that Straife Defendants "regularly do or solicit business, engage in other persistent courses of conduct, or derive substantial revenue from goods used or consumed, or services rendered, in the District of Columbia as required under the long-arm statute." Compl. ¶ 21. Specifically, Plaintiffs allege that:

- Straife LLC has maintained an office in Washington, D.C. at 633 Pennsylvania Ave., NW since at least August 2021. Marketing materials for Straife's team tout D.C. connections, and "one third of its managing directors advertise the District as their location on Straiff's website." *Id.* ¶ 22.

- Fleming is a "D.C. lobbyist" and lobbying disclosures for a different company from the year 2019 "provide examples of his" regular meetings and travel to D.C. on behalf of clients. *Id.* ¶ 23. He maintains a business office at Straife's location, serves as a member of the leadership of Team Eagle Consulting, LLC ("Team Eagle"), which is headquartered in D.C., and derives substantial revenue from his work in D.C.  *Id*.

- Team Eagle was founded by Co-Defendant Payne in September 2024.  In October 2024, Payne and Team Eagle signed a $1.5 million "lobbying" contract with IPRI.  *Id.* ¶¶ 105-106.  Hyperfocal Communications, LLC ("Hyperfocal"), a subsidiary of Straife LLC, allegedly subcontracted with Team Eagle and received payments under this contract.  *Id.* ¶ 107. There is no allegation that either Straife LLC or Fleming performed any work on this contract, or that anyone performed work for this contract in D.C. Apart from the allegation that Fleming is a member of Team Eagle's leadership, the

8

Complaint does not allege any specific purported "lobbying" contacts in D.C. by either of the Straife Defendants since 2019.

Plaintiffs allege that Straife Defendants' role in preparing the report sent to the Uzbekistani Ambassador, and their alleged but unspecified role in further publication of similar statements in two internet posts, caused Mkrtchyan's and Gor's existing contracts in Uzbekistan "to be terminated and prevented their performance, cut off business expectancies, and damaged Mkrtchyan's reputation with Uzbekistan's government" and "the broader international business community." *Id.* ¶ 9. The Complaint alleges that Straife Defendants' conduct caused "certain [unidentified] government officials in Uzbekistan" to prevent the performance of existing and expected contracts in Uzbekistan and to direct some companies[4] to cease working with Gor and Mkrtchyan. *Id.* ¶ 138.

## ARGUMENT

### I.    The Complaint Should Be Dismissed for Lack of Personal Jurisdiction.

On a 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant." *See, e.g.*, *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 135 (D.D.C. 2016), *aff'd*, 690 F. App'x 1 (D.C. Cir. 2017). "In a diversity case, the federal district court's personal jurisdiction over the defendant is coextensive with that of a District of Columbia Court." *Helmer*

---

[4]    The Complaint identifies three companies that allegedly signed contracts with Gor and Mkrtchyan: BASF (a German corporation), China's state-owned investment company CITIC Group, and China National Chemical Engineering & Construction Corporation Seven LTD ("CC7"). Compl. ¶ 134. The Complaint does not provide any detail about these contracts: their scope, their place of execution, or their duration. The Complaint does not name any U.S.-based companies that had signed contracts with Gor and Mkrtchyan prior to Defendants' alleged false statements. The Complaint also does not name any specific companies that ceased working with Plaintiffs or detail the content or time of any specific statements from any government officials directing those companies to cease working with Plaintiffs.

*v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004). The plaintiff must allege specific acts connecting each defendant with the forum and "cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any single defendant." *Hourani*, 164 F. Supp. 3d at 135. Conclusory statements will not suffice to make out the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction. *See, e.g.*, *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988). Although courts should resolve factual discrepancies in favor of the plaintiff, a court need not treat the plaintiff's allegations as true. The court can "receive and weigh affidavits and other relevant matter to assist in determining the jurisdictional facts." *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 5 (D.D.C. 2009) (citation omitted).

The law provides two forms of personal jurisdiction: general and specific. A court can exercise general jurisdiction over a defendant whose contacts with the forum are "so constant and pervasive" as to render him "at home in the forum state." *See Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Specific jurisdiction, on the other hand, exists over a non-resident defendant where the claim arises out of or is related to the defendant's contacts with the forum state. *See Duarte v. Noal*, 190 F. Supp. 3d 8, 12 (D.D.C. 2016). Specific jurisdiction is governed by a two-part framework, under which the court must determine (1) whether the Plaintiff has satisfied the District's long-arm statute, and (2) if he has, whether the exercise of jurisdiction comports with constitutional due process. *See Bauman v. Butowsky*, 377 F. Supp. 3d 1, 6 (D.D.C. 2019).

### A. This Court Lacks General Jurisdiction over Defendants Fleming and Straife LLC.

"General jurisdiction sets a high bar, requiring a defendant's contacts with a forum to be 'continuous and systematic' before forcing a defendant to defend a suit arising out of any subject matter whether or not related to the forum." *D'Onofrio v. SFX Sports Grp., Inc.*, 534 F. Supp. 2d

86, 90 (D.D.C. 2009) (citation omitted).  Pursuant to D.C. Code section 13-422, a D.C. court can exercise general jurisdiction "over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief."

Plaintiffs do not dispute that neither Fleming nor Straife is domiciled in the District. Compl. ¶¶ 13-14.  Further, as discussed in more detail below, Straife Defendants lack, and Plaintiffs have failed to allege, anything approaching the systematic and continuous contacts that would render Straife Defendants "at home" in the District to allow general personal jurisdiction. *E.g.*, *Daimler AG*, 571 U.S. at 122.

**B.      The Court Lacks Specific Jurisdiction over Defendants Fleming and Straife LLC under the D.C. Long-Arm Statute and the Due Process Clause.**

The Complaint relies on two provisions of the District's long-arm statute to support its claim of personal jurisdiction over Straife Defendants: D.C. Code section 13-423(a)(4) and D.C. Code section 13-423(a)(1).  This analysis entails a two-step process: even if a plaintiff carries its burden to show that jurisdiction is proper under the D.C. long-arm statute, the plaintiff must also establish that the exercise of personal jurisdiction comports with the Due Process Clause. *Bauman*, 377 F. Supp. 3d at 6.  "[B]ecause specific personal jurisdiction is claim-specific, it 'must be established for each claim.'" *Smartmatic USA Corp. v. Powell*, Civ. A. No. 1:21-cv-02995 (CJN), 2023 WL 3619346, at *4 (D.D.C. May 24, 2023) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006)); *Kroger v. Legalbill.com LLC*, No. CIV A 04-2189 ESH, 2005 WL 4908968, at *7 n.6 (D.D.C. Apr. 7, 2005) (because specific jurisdiction must be established as to each individual claim, "plaintiff's claims must be analyzed separately").

1.  ***The Court Lacks Jurisdiction Under D.C. Code § 13-423(a)(4) Because the Complaint Fails to Allege Injury to Plaintiffs Within the District of Columbia, or a "Plus Factor" Connecting Defendants to the District.***

Plaintiffs principally allege personal jurisdiction based on D.C. Code section 13-423(a)(4), which allows a D.C. court to exercise personal jurisdiction over a person, who acts directly or through an agent for a claim arising from the person's "causing tortious injury in the District … by an act or omission outside of the District  . . . if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District…." This provision is narrower than the Constitution's due process limits.  *See, e.g.*, *D'Onofrio*, 534 F. Supp. 2d at 93 ("Section 13-423(a)(4) is 'more restrictive than the Due Process Clause of the Constitution—meaning the District government has made a deliberate decision not to allow access to D.C. courts to every person who is injured here and otherwise could bring a claim for civil redress.'") (citation omitted); *Forras v. Rauf*, 812 F.3d 1102, 1108 (D.C. Cir. 2016).

Jurisdiction under this section of the long-arm statute requires Plaintiffs to establish both that their alleged injury occurred within the District of Columbia, and that the Defendants' contacts with the District satisfy one of the statutory "plus factors"—that is, "some other reasonable connection between the [District] and the defendant separate from and in addition to the in-state injury." *Exponential Biotherapies Inc.*, 638 F. Supp. 2d at 7 (citation omitted).  Plaintiffs fail on both accounts.

a)  <u>The Complaint Fails to Allege Injury to Plaintiffs Within the District of Columbia.</u>

Plaintiffs fail to allege any injuries occurring within the District of Columbia.  The only injuries alleged in the Complaint are injuries to Plaintiffs' reputation, contracts, business relationships, and professional standing within the Republic of Uzbekistan, particularly with

Uzbekistan's government, and to Plaintiffs' reputations when this content allegedly circulated in "the broader international business community."  Compl. ¶ 131-132, 134-136, 138 & 141.  The Complaint does not allege a single tie between Mkrtchyan or Gor and the District of Columbia, whether personal, professional, or reputational.  Rather, Plaintiffs reside in Europe and the UK and conduct business in Uzbekistan.  *Id.* ¶¶ 11, 12, 28-29 & 130.

The Complaint's failure to allege any injuries within the District of Columbia is fatal to jurisdiction under subsection (a)(4) of the long-arm statute.  Generally, "when the D.C. Circuit has found tortious injuries in D.C., the plaintiffs have resided there at the time they suffered the financial losses or reputational damage; have been injured in D.C. by defective imported products; or have had their revenues from D.C. consumers or business relationships tortiously interfered with." *Exponential Biotherapies Inc.*, 638 F. Supp. 2d at 10-11 (citations omitted).  Plaintiffs do not allege residence in D.C. at any time, injury by a defective product, or damage to any D.C. business relationships or lost revenue from consumers in D.C.

The Complaint does not allege a single contract with any individual, business, or government entity in the District of Columbia, or even any specific contracts in the United States. The Complaint identifies in general contracts between Plaintiffs and BASF (a German multinational company), China's state-owned investment company CITIC Group, and China National Chemical Engineering & Construction Corporation Sevel LTD ("CC7") for projects in Uzbekistan; it is unclear to what extent, if any, Plaintiffs allege that any these projects entail some unspecified "cooperation" with Uzbekistan's government.  Compl. ¶¶ 131-136.  The Complaint does not allege that any contracts were negotiated or formed in the District, or that any resulting contractual obligations were to be performed here.  And while the Complaint references Plaintiffs' "U.S. business contacts in Washington" and "significant business relationships in the U.S." in

13

passing, *id.* ¶¶ 6 & 29, it fails to name any specific U.S. business contacts who received, knew of, read or were impacted in any way by the alleged false statements. *Id.* ¶ 6. Such "[c]onclusory statements . . . [do] not constitute the *prima facie* showing necessary to carry the burden of establishing personal jurisdiction." *GTE New Media Servs. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000) (some alterations in original) (internal quotation omitted).[5]

Plaintiffs' claims for tortious interference with contract (Count I), tortious interference with prospective business advantage (Count II), and injurious falsehood (Count IV) all require harms to specific business interests of the plaintiff as an element of the claim. *Whetstone Candy Co. v. Nat'l Consumers League*, 360 F. Supp. 2d 77, 81 & n.5 (D.D.C. 2004). Courts in this District have found specific jurisdiction over economic torts to be lacking where the plaintiff's alleged economic harms were all felt outside the District. *Helmer v. Doleyskaya*, 393 F.3d 201, 208-09 (D.C. Cir. 2004) (upholding dismissal of fraud claim under § 13-423(a)(3) where plaintiff was living and working in Russia and the alleged fraud related to the purchase of an apartment in Russia); *Exponential Biotherapies Inc.*, 638 F. Supp. 2d at 10 (plaintiff company located in Virginia failed to allege injuries to it in D.C., where there was no evidence the plaintiff resided in D.C. at the time of the alleged tortious conduct or lost any business in the District); *GTE New Media Servs.*, 199 F.3d at 1349 (complaint failed to establish tortious injury within the District under § 13-423(a)(4), where there was no evidence that plaintiff lost revenues in the District). Since Plaintiffs claim no damage to D.C. business relationships or in D.C.—all the business relationships identified in the

---

[5]    Plaintiffs assert that "Gor's advisory board reflects the company's global reach and technological prowess and has included" various notable U.S. politicians. Compl. ¶ 31. But Plaintiffs do not assert that any of these U.S. individuals lived or worked within the District of Columbia during the period relevant to the allegations in the Complaint, let alone that Straife Defendants' alleged conduct damaged or disrupted a contractual relationship that Plaintiffs had with any of these individuals.

Complaint are with foreign companies—these business tort claims must be dismissed for lack of personal jurisdiction.

Plaintiffs' defamation claim (Count III) also focuses on alleged harms to Plaintiffs' business interests in Uzbekistan and alleged loss of standing with the Uzbekistani government. Compl. ¶ 133 ("Gor's and Mkrtchyan's businesses and their projects rely on a positive reputation with the government of Uzbekistan."); *id*. ¶ 138 ("[S]hortly after Defendants sent their false statements to Uzbekistan's Ambassador . . . , certain government officials in Uzbekistan took actions to stop and prevent the performance of these existing and expected contracts…."). Plaintiffs repeatedly allege that Uzbekistan's Embassy is located in the District and that "Defendant's inten[ded] to mislead, manipulate, and otherwise use Uzbekistan's government—through their connections to the Ambassador and Embassy in Washington." *Id.* ¶ 139. Of course, the allegedly false language in the report that is the basis of the defamation claim was transmitted under cover letter addressed to the President of Uzbekistan, not to the Ambassador or anyone else in the Uzbekistani Embassy. All of this goes to show that, as alleged in the Complaint, Plaintiffs' injuries occurred in Uzbekistan, where Plaintiff's business interests were allegedly harmed.

Courts considering defamation claims under D.C.'s long-arm statute have frequently recognized the location of injury to be where the plaintiff lives, works, or otherwise has substantial community ties, because such location is where the plaintiff's reputational harm is felt. *Hourani*, 164 F. Supp. 3d at 138 ("[T]he alleged injury—to Plaintiff's reputation—occurred in Virginia where Plaintiff lives. Plaintiff does not allege that he suffered any injury in the District of Columbia."); *Poss v. Kern*, No. 23-cv-2199 (DLF), WL 4286088, at *3 (D.D.C. Sep. 5, 2024) ("Ordinarily, injury from defamation occurs where the defamed person resides. But the person's place of employment could also be a possible location, especially when, as here, the plaintiff

alleges reputational injury.") (citations omitted); *Zavadovsky v. Rabl*, Civ. A. No. 24-1997 (RC), 2025 WL 2466024, at *6 (D.D.C. Aug. 27, 2025) (long-arm jurisdiction not established under Section 13-423(a)(3) based on alleged defamatory statements made via phone calls and emails to Secret Service employees in the District of Columbia, in part because "Plaintiffs, as Florida residents, have also not alleged any 'tortious injury' occurring within the District of Columbia . . . ."); *but see Groop Internet Platform Inc. v. Psychotherapy Action Network*, Civ. A. No. 2020 WL 353861, 2020 WL 353861, at * 5 (D.D.C. Jan. 21, 2020). Here, the Complaint fails to allege any reputational harm within the District of Columbia. It is not even clear from the Complaint whether the Ambassador ever read or acted on the report while he was in the District.

Because the Complaint alleges injury exclusively to Plaintiffs' business and economic interests in Uzbekistan and standing with the Uzbekistan government and does not allege any reputational or commercial injury within the District, Plaintiffs fail to satisfy the requirements for specific jurisdiction under section 13-423(a)(4) for all of their claims.

> b) <u>The Complaint Fails to Allege Sufficient Facts Establishing Any of the Statutory Plus Factors Under § 13-423(a)(4).</u>

Section (a)(4) also requires a plus factor separate from and in addition to the in-state injury. *Lewy*, 723 F. Supp. 2d at 123. This requirement reflects the legislature's desire to make personal jurisdiction under this section more restrictive than the Constitution allows: "[B]ecause the harm-generating act (or omission) occurred outside, the statute calls for something more," and the plus factors "serve to filter out cases in which the in forum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Crane v. Carr*, 814 F.2d 758, 762-63 (D.C. Cir. 1987). The three plus factors are: "(1) regularly doing or soliciting business in the District; (2) engaging in any other persistent course of conduct in the District; or (3) deriving substantial

revenue from goods used or consumed, or services rendered, in the District of Columbia." *Id.* at 763 (citing D.C. Code § 13-423(a)(4)).

The Complaint fails to allege facts establishing these plus factors as to either of the Straife Defendants. Plaintiffs attempt to connect Mr. Fleming to the District by conclusorily describing him as a "D.C. lobbyist." Compl. ¶ 23. Fleming denies that he is a registered lobbyist. Ex. A, Decl. of Joseph Fleming ("Fleming Decl.") ¶ 10. Moreover, as Plaintiffs acknowledge, Fleming lives and works in Texas and his company, Straife LLC, is a Texas LLC with its principal place of business in Houston. Compl. ¶ 13. Regardless, the Complaint's labeling of Mr. Fleming as a "D.C. Lobbyist"—without any statements of the extent of lobbying or revenue derived from it— fall far short of establishing that Mr. Fleming does business in the District, engages in a persistent course of conduct there, or derives substantial revenue from services rendered in the District.

Plaintiffs' conclusory allegations that Mr. Fleming has "regular meetings and travels to the District on behalf of clients" and "regularly engages U.S. and foreign government officials in the District on behalf of clients," Compl. ¶ 23, fail to meet any of subsection(a)(4)'s plus factors. The Complaint does not attempt to quantify these alleged "regular meetings and travels to the District,"[6] and occasional travel to the District is insufficient to establish a persistent course of conduct. *See, e.g.*, *Lewy*, 723 F. Supp. 2d at 124 (collecting cases). Similarly, "courts have held

---

[6]    The Complaint refers to a single supplemental FARA statement filed by Defendant Payne's company, Linden Government Solutions, on December 30, 2019, but did not attach this document as an Exhibit. *Id.* ¶ 23. Although this document lists 36 instances of Mr. Fleming contacting other individuals or organizations between May and August of 2019 (more than five years ago) related to Linden Government Solution's lobbying efforts, many of these contacts were made via phone or email. Moreover, the document does not make clear whether Mr. Fleming or any of individuals he contacted were located in the District when these alleged calls and meetings took place. Further, these contacts happened **five years** before the events of this lawsuit. Meetings happening during a three-month period more than five years ago does not equal "doing business" or a "persistent course of conduct."

that defendants who place telephone calls from another state into the District have not engaged in conduct 'in the District,' regardless of the nature or frequency of the telephone calls." *Id.* (citing *Tavoulareas v. Comnas*, 720 F.2d 192, 194 (D.C. Cir. 1983)); *see also Burman v. Phoenix Worldwide Indus., Inc.*, 437 F. Supp. 2d 142, 154 (D.D.C. 2006) (holding that approximately 1,326 telephone calls to the District does not constitute a "persistent course of conduct").

The Complaint's allegations regarding an affiliation between Fleming and Team Eagle LLC (Co-Defendant Payne's D.C. limited liability company), Compl. ¶¶ 23, 107, also fail to satisfy the plus factors. The Complaint alleges no details—for instance, was Fleming paid for his alleged position as a "leader" of Team Eagle, what was his title as a "leader," or what were his responsibilities as a "leader"—about the nature and extent of Fleming's activities relating to Team Eagle in the District. Fleming did not earn any income from Team Eagle, and did no work for Team Eagle in D.C. Ex. A, Fleming Decl. ¶ 13. As for Defendant Straife LLC, contacts of a subsidiary company are not imputed to the parent for purposes of jurisdictional analysis absent a complaint of veil-piercing. Plaintiffs have not alleged that the corporate veil should be pierced for jurisdictional purposes and allege no facts that would make the "strong showing" necessary to pierce the veil. *E.g.*, *Roadget Bus. PTE, Ltd. v. PDD Holdings Inc.*, Civ. A. No. 2026 WL 44864, 2026 WL 44864, at *5 (D.D.C. Jan. 7, 2026); *Sapieyevski v. Live Nation Worldwide, Inc.*, Civ. A. No. 18-cv-830 (TJK), 2020 WL 4432119, at *3 (D.D.C. July 31, 2020).

Plaintiffs also allege that Straife has maintained an office in D.C. at 633 Pennsylvania Ave since August 2021, that marketing materials for Straife's team tout their D.C. connections, and that one third of its managing directors advertise the District as their location on Straife's website. Compl. ¶ 22-23. These allegations are likewise insufficient to satisfy section (a)(4)'s plus factors.

First, the Washington D.C. address is only a mailing address; Straife conducts no business there. Ex. A, Decl. of Joseph Fleming ¶¶ 5-6.[7] Having a mailing address in the District, by itself, does not even satisfy the constitutional requirement for personal jurisdiction, let alone the D.C. long-arm statute's more stringent requirements. *See Dickson v. United States*, 831 F. Supp. 893, 897 (D.D.C. 1993) (no jurisdiction where plaintiff "merely listed [District of Columbia] mailing addresses at CIA for officials and made no allegations regarding residences or principal places of business."); *Doe v. Benoit*, No. 19-cv-1253 (DLF), 2020 WL 11885578, at *5 (D.D.C. Jun. 29, 2020) (no jurisdiction over Pentagon employees who worked in Arlington, Virginia even though they had D.C. mailing addresses).

Second, touting generic political connections on one's website does not amount to "regularly doing or soliciting business in the District" or engaging in a "persistent course of conduct." *Bauman*, 377 F. Supp. 3d at 7 ("There is also no support for the proposition that merely speaking about a forum (or about entities within that forum)—e.g., . . . *discussing one's relationships with federal government officials*—can confer specific jurisdiction in the absence of identifiable forum contacts.") (emphasis added).

Third, the Complaint's conclusory allegations that various employees of Straife LLC "advertise the District as their location on Straife's website" are vague (for instance, there is no explanation of what services are allegedly being advertised) and insufficient to establish that any of these individuals are present in the District or do substantial work here on behalf of Straife LLC. None of these employees lives or maintains a place of business in the District.  Ex. A, Fleming Decl. ¶ 8.  The Complaint also fails to offer any facts in support for the conclusory allegations that

---

[7] Straife's website also lists addresses at several cities, including its headquarters in Houston, TX, as well as Washington, DC, Istanbul, Brussels, Kuala Lumpur, and Tirana.

both Fleming and Straife LLC derive "substantial revenue" from services performed in the District. In short, the allegations concerning Straife LLC's and Fleming's activities fail to show sufficient contacts with the District to establish any of the statutory plus factors. *Compare Burman*, 437 F. Supp. 2d at 154-56, *with Lewy*, 723 F. Supp. 2d at 123-28.

Finally, Plaintiffs contend that Defendants "caused paid content, blog posts, and articles to be published in the District that ostensibly corporate their false and defamatory claims, with the intent that the Ambassador and his staff read and act upon them." Compl. ¶ 20. But it is well established that "*writing* an article for a publication that is circulated throughout the nation, including the District, hardly constitutes doing or soliciting business, or engaging in a persistent conduct, *within* the District and thus does not satisfy the requirements of (a)(4)." *Id.* (quoting *Forras*, 812 F.3d at 1108); *see also McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1300 (D.C. Cir. 1996); *Moncrief v. Lexington Herald–Leader Co.*, 807 F.2d 217 (D.C. Cir. 1986).

### 2. The Court Lacks Jurisdiction Under Plaintiffs' Alternative Theory Invoking D.C. Code § 13-423(a)(1).

#### a) The Complaint Fails to Establish that Plaintiffs' Claims Arise From the Defendants' Transacting Business in the District.

Plaintiffs also invoke subsection (a)(1) of the D.C. long-arm statute, which permits jurisdiction "over a person, who acts directly or by an agent, as to a claim of relief arising from the person's . . . transacting any business in the District." D.C. Code § 13-423(a)(1). Courts have interpreted this "transacting any business" clause of the long-arm statute "to be coextensive with the Constitution's due process requirements and thus to merge into a single inquiry." *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). To establish specific jurisdiction under § 13-423(a)(1), however, Plaintiffs must establish not only that Defendants transacted business in the District, but also that Plaintiffs' claim "arose from that business." *Gather Workspaces LLC v. Gathering Spot, LLC*, Civ. A. No. 19-2669 (RC), 2020 WL 6118439,

at *5 (D.D.C. Oct. 16, 2020).  Here, the Complaint does not allege that Plaintiffs' claim arose from any business transacted in D.C. by either of the Straife Defendants.

First, Plaintiffs' claims do not arise from any business transacted between Straife Defendants and Plaintiffs, as that business relationship ended prior to the events giving rise to this lawsuit.  Compl. ¶ 60.  And in any event, there is no allegation that this prior business transaction had any connection to the District—in particular, there is no allegation that any contracts were negotiated or signed in the District or that any work related to those contracts was performed there.

Second, Plaintiffs do not allege that Defendants' work for United Cement Group (UCG), which Plaintiffs claim gave rise to the allegedly false report, amounted to transacting business within the District.  There is no allegation that any contracts were negotiated or signed in the District, or that Defendants performed any work related to the contract in the District.  In particular, there is no claim that any work preparing the report was done in D.C., and Plaintiffs concede that the transmission of the report to the Embassy occurred from outside of D.C.  *See* Ex. A, Fleming Decl. ¶ 16.  Thus, Plaintiffs fail to establish that their claims arose from Defendants' transaction of business in the District of Columbia.

    b) *The Complaint's Allegations Concerning Defendants' Commercial Activities Fail to Establish That Either Defendant Transacted Business in the District under the Government Contacts Exception.*

The Complaint's invocation of subsection (a)(1) additionally fails under the District of Columbia's "government contacts exception." *See Akhmetshin v. Browder*, 275 A.3d 290, 292-93 (D.C. 2022).  That exception provides that the maintenance of an office "for the purpose of interacting with the federal government . . . . cannot establish personal jurisdiction." *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 16 (D.D.C. 2014).  The doctrine "bars any contacts due to 'a nonresident's entry into the District of Columbia for 'the purpose of contacting federal governmental agencies' 'from 'serv[ing] as a basis for personal jurisdiction.'" *Id.* (alteration

in original); *see also Akhmetshin*, 275 A.3d at 298 (Glicksman, J., dissenting) ("The government contacts exception is a 'long-standing and still vital doctrine that entry into the District of Columbia by nonresidents for the purpose of contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction.'" (quoting *Env't Rsch. Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.*, 355 A.2d 808, 813 (D.C. 1976)).

Virtually the entirety of the Complaint's allegations concerning Defendants' alleged transaction of business in the District consist of "lobbying" in the District and "engag[ing] U.S. and foreign government officials in the District on behalf of his clients. . . ." Compl. ¶¶ 22-23. Such contacts cannot be considered as any part of the basis for the Court's jurisdiction under section 13-423(a)(1). Additionally, a defendant's "calls, emails, facsimiles and mailings, including invoices, to [plaintiff's] D.C. office are insufficient to subject it to this Court's personal jurisdiction." *Exponential Biotherapies Inc.*, 638 F. Supp. 2d at 9; *see also Dove v. United States*, Civ. A. No. 86–0065–LFO, 1987 WL 18739, at *3 (D.D.C. Oct. 9, 1987) ("Exchange of letters and telephone communications with a party in [D.C.] alone is not considered a jurisdictionally significant contact.") (citation omitted). "[S]uch communications are incidental to nearly every business relationship; they are not indicative of any desire to do business in D.C. and do not suffice to show purposeful availment or minimum contacts." *See Exponential Biotherapies, Inc.*, 638 F. Supp. 2d at 9. Here, Plaintiffs have not even alleged any specific contacts between Straife Defendants and any clients or customers based in D.C.[8]

---

[8]    While the Complaint includes cursory and conclusory references to alleged meetings "with and on behalf of clients" in the District, Compl. ¶ 23, it is devoid of any allegation of any specific such meeting, let alone a client or customer business relationship within the District. Additionally, the Complaint does not allege that any such meetings with clients in the District were separate from or unrelated to meetings with government officials that are excluded from the jurisdictional analysis under the government contacts exception.

### 3. The Complaint Fails to Establish that the Exercise of Personal Jurisdiction Is Appropriate Under the Due Process Clause.

Even if the long-arm statute were satisfied, which it is not, exercising personal jurisdiction over Straife Defendants does not comport with constitutional due process. The Due Process Clause limits a court's power to assert personal jurisdiction over non-resident defendants to situations where a defendant has established minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *See Hourani*, 164 F. Supp. 3d at 137 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) and *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The defendant must have "purposefully avail[ed]" himself of the privilege of conducting activities in the forum state such that he should reasonably anticipate being haled into court there. *Hourani*, 164 F. Supp. 3d at 137 (citing *Burger King*, 471 U.S. at 476 and *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In other words, the defendant must have "fair warning" that a particular activity may subject him to the jurisdiction of a foreign state, he must have "deliberately reached out beyond [his] home," and the plaintiff's claim "must arise out of or relate to the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (internal quotation marks omitted). Plaintiffs bear the burden of establishing a factual basis for personal jurisdiction and must allege specific acts connecting the defendant with the forum. *Akhmetshin v. Browder*, 761 F. Supp. 3d 1, 10 (D.D.C. 2024).

Plaintiffs have failed to establish sufficient minimum contacts to justify specific personal jurisdiction over Straife Defendants. Plaintiffs' claimed injuries do not "arise out of" or "relate to" Fleming and Straife LLC's alleged connections with the District of Columbia. *See Bristol-Myers Squibb Co. v. Superior Ct of Ca.*, 582 U.S. 255, 262, 264 (2017) (explaining that Plaintiffs' claims must "arise out of or relate to the defendant's contacts with the forum" and "when there is

no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State"). Most of the contacts alleged in the Complaint, namely Fleming and Straife's alleged lobbying activities in the District, are not tethered to the Plaintiff's claims. *See supra*, Argument Section I.B.2.(b). And these unrelated contacts are not relevant to the constitutional minimum contacts analysis. *Id.*

Plaintiffs' claims against Straife Defendants are founded on the allegation that they prepared an investigative report outside of the District. Plaintiffs further allege that this report was then attached to a letter addressed to the President of Uzbekistan and sent by an Indiana-based law firm acting at the direction of the Uzbekistani company, UCG, to the Uzbekistani Ambassador.[9] This is too tenuous a connection upon which to exercise personal jurisdiction over an out-of-state defendant, especially considering that Plaintiffs are not even D.C. residents, and their alleged injuries were felt exclusively in a different country halfway around the world. *AGS Int'l Servs. SA v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 82 (D.D.C. 2004), *abrogated on other grounds as recognized in Toumazou*, 71 F. Supp. 3d 7 (finding no specific jurisdiction where "none of the plaintiffs are residents of the District of Columbia or even United States citizens, and therefore, the District of Columbia's legitimate interests in this dispute are considerably diminished") (cleaned up).

Plaintiffs also fail to show that Fleming or Straife have "purposefully availed" themselves of the privilege of conducting activities in the District such that they should reasonably anticipate being haled into a D.C. court. Notably, the letter and attached report, which were transmitted via email by the Indiana law Firm Bose McKinney & Evans LLP, is addressed to "His Excellency

---

[9]    The initial letter addressed to the President of Uzbekistan and attached report are attached to the Complaint as Exhibit 2. The retraction letter stating that "[t]he letter and report were sent at the request of . . . United Cement Group (UCG)" is attached to the Complaint as Exhibit 7.

Shavkat Mirziyoyev, President of the Republic of Uzbekistan, Tashkent, Uzebkistan." Compl. Ex. 2. The Uzbekistani Ambassador to the United States, who Plaintiffs claim was the targeted recipient of the letter in Washington D.C., is listed in the "cc" line under Akard's signature without an address listed. *Id.* Even if the Uzbekistani Ambassador in fact received the email, read the report attached to the letter and found the statements in it credible, and took any action on an electronic copy of this letter while in Washington, D.C.—none of which the Complaint establishes—this does not mean that the Defendants should have expected to be haled into court in the District, when the letter's intended audience was the President of Uzbekistan. Moreover, the alleged actions taken in response to that letter that purportedly caused Plaintiffs injuries were not taken by the Uzbekistani Ambassador or in D.C., but instead by unspecified government officers in Uzbekistan, and all related to Plaintiffs' alleged contracts and business relationships in that country. *See Rusesabagina v. Republic of Rwanda*, Civ. Case No. 22-469 (RJL), 2023 WL 2562692, at *6 (D.D.C. Mar. 16, 2023) (holding that plaintiff did not plead sufficient jurisdictional facts when the only basis for jurisdiction was "the inference that Rwanda's ambassador and other embassy staff, who [were] not named as parties, took certain unspecified actions to 'coordinate' or 'direct' the actions of other agents of the Rwandan government").

On similar facts—except that the case for jurisdiction there was stronger given that the plaintiff was a D.C. resident and claimed to have suffered injury to his reputation there—this Court held that the exercise of specific jurisdiction over a defamation claim did not comport with Due Process, finding that the Defendant's conduct was not "expressly aimed" at the District. *Akhmetshin*, 761 F. Supp. 3d at 11-12. There, the Court explained that to exercise personal jurisdiction under the "effects" test, a plaintiff must show "(1) intentional actions, (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered—and the defendant knows

is likely to be suffered—in the forum state." *Id.* (citation omitted). Here, not only was Defendants' alleged conduct not "expressly aimed at" the District, but the brunt of the harm, if not all of it, was suffered in Uzbekistan. *Cf. Calder v. Jones*, 465 U.S. 783, 789 (1984) (holding that specific jurisdiction existed in defamation case where "California [was] the focal point both of the story and of the harm suffered."). Uzbekistan—not the District—was the focal point of the alleged harm and the location toward which Defendants allegedly aimed their conduct. Compl. ¶ 139 ("Indeed, it was Defendants' intent to mislead, manipulate, and otherwise use Uzbekistan's government— through their communications to the Ambassador and Embassy in Washington—to do exactly what the government did in response.").

Finally, even if the minimum contacts prong could be met, exercising personal jurisdiction over Defendants based on these alleged facts does not comport with notions of fair play and substantial justice. It is not fair to require Fleming and Straife LLC—a Texas resident and a Texas company—to defend themselves in the District when none of the Defendants, nor the Plaintiffs are domiciled in the District, the Defendants' alleged tortious conduct did not occur in the District, Plaintiffs' only alleged injuries were suffered in Uzbekistan, and the entire gravamen of the Complaint concerns conduct directed toward a foreign government located halfway around the world. *See Akhmetshin*, 761 F. Supp. 3d at 13-14 (finding jurisdiction in that case did not comport with "our traditional conception of fair play and substantial justice") (citation omitted).

### 4. *Personal Jurisdiction Is Not Proper Under a Conspiracy Jurisdiction Theory*

Finally, the requirements for conspiracy jurisdiction are not present in this case, because the Complaint does not allege an act in furtherance of the alleged conspiracy within the District by any of the alleged co-conspirators. *Globe Metallurgical, Inc. v. Rima Indus. S.A.*, 177 F. Supp. 3d 317, 330 (D.D.C. 2016).

**II.      Each Count of the Complaint Should Be Dismissed for Failure to State a Claim.**

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must "accept[] all well-pleaded factual allegations as true," *Precision Contracting Sols., LP v. ANGI Homeservices, Inc.*, 415 F. Supp. 3d 113, 119 (D.D.C. 2019), "where the well-pleaded facts do not permit a court, drawing on its judicial experience and common sense, to infer more than the 'mere possibility of misconduct,' the complaint has not shown that the pleader is entitled to relief." *3M Co. v. Boulter*, 842 F. Supp. 2d 85, 114 (D.D.C. 2012) (quoting *Iqbal*, 556 U.S. at 670).  A court "need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012).  The factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555.

All of Plaintiffs' claims against the Straife Defendants rest to some extent on their speculative and unsupported claims that the report allegedly sent to the Uzbekistani Ambassador triggered the dissemination by unidentified persons of false and/or malicious information about them across the globe, resulting in unspecified and unquantified harms to their vaguely described business interests in Uzbekistan, again, as a result of the actions and decisions of persons unknown. This is not a situation where well-pled facts provide a basis to infer a missing link in a causal chain. Plaintiffs' Complaint rests on unsubstantiated speculation that any chain exists at all to link the Straife Defendants' allegedly wrongful conduct and Plaintiffs' claimed harms.  The vague and conclusory Complaint fails to state a viable claim for any of its five causes of action.

A.    **The Complaint Fails to State a Claim for Tortious Interference with Contract.**

Count I should be dismissed because Plaintiffs fail to plead the necessary elements of a tortious interference with contract claim.  A plaintiff must allege: "(1) the existence of a contract; (2) knowledge of the contract; (3) intentional procurement of a breach of the contract; and (4) damages resulting from the breach."  *Casco Marina Devl., L.L.C. v. D.C. Redevelopment Land Agency*, 834 A.2d 77, 83 (D.C. 2003) (quoting *Paul v. Howard Univ.*, 754 A.2d 297, 309 (D.C. 2000)).

Here, Plaintiffs fail to plead elements 2-4, particularly: which specific contracts Straife Defendants allegedly knew about and intentionally interfered with, or any damages allegedly caused by breach or non-performance of these unidentified contracts.  These failures mandate dismissal.

1.    *The Complaint Fails to Allege Any Specific Contract That Was Interfered With.*

As this Court has recognized, "[T]ortious interference claims are routinely dismissed where the plaintiff fails to name specific contractual relationships that the defendant allegedly interfered with . . . ."  *Nyambal v. Alliedbarton Sec.. Servs., LLC*, 153 F. Supp. 3d 309, 316 (D.D.C. 2016), *reconsideration granted in part on other grounds*, 344 F. Supp. 3d 183 (D.D.C. 2018) (Sullivan, J.)*; see also Gov. Relations Inc. v. Howe*, No. Civ.A. 05–1081 CKK, 2007 WL 201264, at * 9 (D.D.C. Jan. 24, 2007).

Plaintiffs allege that their "businesses and projects rely on cooperation with the Uzbek government and large international corporations," but fail to identify any specific contracts with either that the Straife Defendants allegedly intentionally interfered with.  Compl. ¶ 133.  Plaintiffs allege that in 2021, "Uzbekistan's President issued a . . . decree to direct the resources and cooperation of Uzbekistan's government toward Gor's and Mkrtchyan's projects" and refer to

28

other, unspecified "Uzbek government support." *Id.* ¶¶ 131, 132, 133. But Plaintiffs do not identify any contracts with the Uzbekistani government. Instead, Plaintiffs claim to have entered into multiple unspecified contracts with three companies operating in Uzbekistan: BASF, CITIC group, and China National Chemical Engineering & Construction Corporation Sevel Ltd. ("CC7").[10] Compl. ¶¶ 134-135. Plaintiffs do not specify the scope of contents of any contract. Instead, they vaguely refer to the year in which they claim to have entered into a contract with each of these entities, but do not specify which, if any of these contracts were connected to projects that received unspecified support or cooperation from the Uzbekistani government, or which, if any, of the multiple alleged contracts with each company the Straife Defendants knew about and deliberately interfered with.[11] Plaintiffs further allege that after the report was allegedly sent to the Ambassador, "Uzbek government officials expressly directed *some* of the above-referenced companies to cease working" with Plaintiffs, but do not specify which of the companies were allegedly directed in this way and which were not, or which, if any, of these companies ceased doing business with Plaintiffs at all, let alone because of this direction as opposed to some other reason. Compl. ¶ 138 (emphasis added).

The clutter of Plaintiffs' general allegations related to their previously supportive relationship with the Uzbekistani government and their business dealings cannot camouflage their failure to identify any specific contract the Straife Defendants allegedly interfered with—a failure that is fatal to their claim. *See e.g.*, *Nyambal*, 153 F. Supp. 3d at 316 (D.D.C. 2016); *Saha v.*

---

[10] The Complaint claims in conclusory fashion that Plaintiffs also entered into contracts with "these companies and others," Compl. ¶ 136, but does not identify any other companies or contracts, or describe what these other alleged contracts are for.

[11] The Complaint contains a conclusory allegation that "Defendants had actual knowledge of these existing and prospective contracts" from their prior work with Plaintiffs and information provided by UCG and Shadmanov, Compl. ¶ 137, but does not identify any such information that was provided or identify any specific contracts that Straife Defendants allegedly knew about.

*Teladoc Health Med. Grp., P.A.*, Case No. 23-cv-3188 (JMC), 2025 WL 2779977, at *8 (D.D.C. Sep. 30, 2025); *Sharpe v. Am. Acad. of Actuaries*, 285 F. Supp. 3d 285, 292 (D.D.C. 2018).

> ### 2. The Complaint Fails to Allege Damages Resulting from Any Breach or Non-Performance of Any Contract.

Relatedly, the tortious interference with contract claim should also be dismissed because the Complaint fails to identify any specific breach or other act of non-performance resulting in damages. Although courts in the District typically have not required plaintiffs to allege *breach*, they must at least allege a failure of performance. *Casco Marina Devel., L.L.C.*, 834 A.2d at 84.[12] Plaintiffs' conclusory allegations that allegedly false statements by the Straife Defendants "caused counterparties to terminate existing contracts and projects, prevented the performance of existing contracts, and caused counterparties with which Gor and Mkrtchyan were to sign further contracts to refuse to sign contracts and to cease business with them in Uzbekistan" are insufficient. Compl. ¶ 138; *see Trilogy Fed., LLC v. CivitasDX LLC*, Civ. A. Nos. 24-2713, 25-792, 2025 WL 2651240, at *16 (D.D.C. Sept. 16, 2025). Similarly, absent an alleged breach or act of non-performance tied to any specific contract, this claim also fails to allege the element of damages resulting from such breach. Each of these failures provides grounds for dismissal.

> ### 3. The Complaint Fails to Plausibly Allege A Direct and Natural Causal Link Between Straife Defendants' Alleged Conduct and Plaintiffs' Claimed Harms.

Further, Plaintiffs' tortious interference claims fail because the Complaint does not allege any plausible causal link between Defendants' alleged conduct and Plaintiffs' claimed damages. A plaintiff asserting a tortious interference claim must "establish a 'substantial and direct causal

---

[12] *But see Klayman v. Porter*, Civ. A. No. 24-2853(RBW), 2026 WL 320191, at *7 n.5 (D.D.C. Feb. 6, 2026) (noting an inconsistency in the decisions of the D.C. Court of Appeals as to whether actual breach must be alleged).

link' between [the] alleged interference and the damages suffered." *Newmyer v. Sidwell Friends Sch*. 128 A.3d 1023, 1038 (D.C. 2015); *Trilogy Fed., LLC*, 2025 WL 2651240, at *15, *17-18 (granting motion to dismiss tortious interference claim because of a "lack of any causal connection between the alleged contractual disruption and the injury"). Spanning the globe and countless unidentified intermediaries, Plaintiffs' claimed causal connection between the Straife Defendants and their alleged harms is anything but direct.

Plaintiffs' theory of causation rests on the assertion that the allegedly false statements made in the report provided to the Ambassador were somehow disseminated either directly or indirectly to unspecified Uzbekistani government officials who "directed" "some" of the three companies named in the Complaint, in a manner and through persons unknown, to stop doing unspecified business with Plaintiffs that had previously been supported in some unspecified fashion by the Uzbekistani government. Compl. ¶ 138.

Even though the Complaint depends on this inferential chain, Plaintiffs do not allege specific facts to support that anyone other than the Ambassador ever saw, heard about, or received the allegedly false statements.[13] And even if the Complaint were read generously to allege that the President received the statements, it contains no allegation that he read them or believed them, let alone took any action upon them. Similarly, the Complaint fails to allege facts showing that government officials who allegedly withdrew "support" and "cooperation" for Plaintiffs' business projects or allegedly communicated with counterparties were even aware of the allegedly false statements, let alone in any way influenced by them. Notably, the timing of these alleged

---

[13] While the Complaint contains a conclusory statement that "Defendants published the false statements without privilege to third parties, including the Uzbek Ambassador in Washington and his staff, the Uzbek President, and to others," Compl. ¶ 162, there are no specific facts alleging that the President actually received or read the report.

government officials' actions is stated in the most general, unspecific way: their actions were taken "shortly after" the report was sent to the Ambassador.  Compl. ¶ 138.  *See 3M Co.*, 842 F. Supp. 2d at 115-16 (granting Rule 12(b)(6) dismissal where complaint failed to allege that defendants had any contact with "government professionals responsible for making [the contracting] decisions" and therefore failed to establish that Defendants' conduct caused plaintiff's bids to go "nowhere").  The alleged temporal proximity of such vaguely described and attenuated events, standing alone, does not provide the "'substantial and direct causal link' between [the] alleged interference and the damages suffered" required to avoid dismissal.  *See Newmyer*, 128 A.3d at 1039 (citation omitted).

> **B.    Plaintiffs' Claim for Tortious Interference with Prospective Business Advantage Fails to Allege a Knowing and Intentional Interference with a Commercially Reasonable Business Expectancy Caused by the Straife Defendants.**

A claim for tortious interference with prospective business advantage depends on a valid business expectancy, rather than an existing contract, but the elements of the two claims are otherwise identical.  *Casco Marina Devel., L.L.C.*, 834 A.2d at 84.  As a result, the same failures to adequately plead the Straife Defendants' knowledge of Plaintiffs' contracts and a causal link apply with equal force to their tortious interference with prospective business advantage claim and similarly warrant dismissal of Count II.  *Brown v. Carr*, 503 A.2d 1241, 1247 (D.C. Cir. 1986) ("To establish a prima facie case of interference with business relations, 'a plaintiff must show that the interference was intentional and that there was resulting damage.'") (citation omitted).

As relates specifically to Count II, Plaintiffs' claim fails for the additional reason that their vague and conclusory allegations fail to identify a reasonable business expectancy as required to pursue their tortious interference with prospective business advantage claim.  To support a claim, a business expectancy "must be 'commercially reasonable to anticipate'"; "amorphous

32

allegations" are not sufficient. *Command Consulting Grp., LLC v. Neuraliq, Inc.*, 623 F. Supp. 2d 49, 52-54 (D.D.C. 2009); *see also Wash. Metro. Area Transit Auth. v. Quick Serve Foods, Inc.*, Civ. Nos. 04-838(RCL), 04-687(RCL), 2006 WL 1147933, at *6 (D.D.C. Apr. 28, 2006) (complaint dismissed for failure to plead "sufficient facts to demonstrate the probability of future business expectancy" that was not merely speculative).

Count II should be dismissed because Plaintiffs have failed to allege anything other than a generic and unspecified interest in future business transactions with third-parties that they claim was harmed by the "government's withdrawal of its support" for Plaintiffs' projects. *See* Compl. ¶ 138.[14]  Plaintiffs' failure to identify the government support allegedly withdrawn and its relationship to vaguely described "projects" makes it impossible to infer that Plaintiffs' claimed expectations were commercially reasonable, as required to withstand dismissal.

In fact, precedent supports the conclusion that Plaintiffs' claimed expectations dependent on continuing government support that would encourage third parties to do business with them is speculative and unreasonable as a matter of law.  While "an expectation of successfully competing in the future for [government] contracts . . . and of working with [a plaintiff's] current suppliers on those contracts" can constitute a valid business expectancy, *Sabre Int'l Security v. Torres Advanced Enter. Sols., Inc.*, 820 F. Supp. 2d 62, 77 (D.D.C. 2011), the District of Columbia Court of Appeals has also recognized that business hopes that are entirely contingent on a favorable exercise of government discretion are not commercially reasonable.  In *Carr v. Brown*, the Court of Appeals held that a business expectancy contingent on a favorable outcome in a government

---

[14] While this paragraph alleges that existing counterparties "refuse[ed] to sign contracts" with Plaintiffs, the failure of the Complaint to specify any such contract or counterparty does not warrant an inference of any such lost contract. *Hettinga*, 677 F.3d at 476 (court considering a rule 12(b)(6) motion "need not accept inferences drawn by plaintiff if those inferences are not supported by the facts set out in the complaint").

permitting process was not commercially reasonable and "too remote" to be actionable. 395 A.2d 79, 84 (D.C. 1978); *see also Democratic State Comm. of D.C. v. Bebchik*, 706 A.2d 569, 573 (D.C. 1998). Here, Plaintiffs' claim is even more attenuated. They do not allege a concrete expectation of doing business with any particular government body or third-party company.[15]

Similarly, any alleged business expectancy claimed by Plaintiffs as a result of an alleged statement by CITIC informing Uzbekistan's President that CITIC was "ready" to invest an additional $1.5 billion in their project is commercially unreasonable and insufficient to support Plaintiffs' claim. *See* Compl. ¶ 135. *See Xereas v. Heiss*, 933 F. Supp. 2d 1, 11 (D.D.C. 2013) (speculative expectation of unidentified prospective business relationships based on past relationships was not commercially reasonable). Plaintiffs not only fail to provide any details about who made the statement, when, or the allegedly anticipated use for the alleged funds, but also do not allege that this investment failed to come to fruition. Plaintiffs also fail to provide any facts as to when they learned of this alleged statement. In any event, it is not commercially reasonable to rely on second-hand information about such an alleged statement as a source of a legitimate business expectancy. *Cf. Precision Contracting Sols., LP*, 415 F. Supp. 3d 113, 124-25 (expectancy for relationships with "District consumers" based on "glowing ratings and reviews" about plaintiff on website insufficient to plead a tortious interference claim).

At bottom, Plaintiffs' intentional interference with business expectancy claim rests on a vague hope that indefinite and unspecified "support" from the Uzbekistani government would someday lead to unspecified transactions with third-parties—a kind of generalized, pie in the sky hope untethered to an existing contract, project or other piece of business. *See* Compl. ¶¶ 131, 133

---

[15]    As noted above, though the Complaint identifies three companies with whom Plaintiffs' allegedly had contracts, it stops conspicuously short of identifying any specific opportunity with any of these companies that was allegedly harmed.

& 136.  This attenuated and factually unsupported chain of expectations is too contingent and speculative to be commercially reasonable and cannot support a claim for tortious interference with prospective business relations.

### C.    The Complaint Fails to State a Claim for Injurious Falsehood.

Plaintiffs claim for injurious falsehood similarly fails for two reasons: (1) Plaintiffs do not allege any false statements about their property or products; and (2) Plaintiffs fail to plead special damages consistent with the heightened standard of Federal Rule of Civil Procedure 9(g).

### 1.   The Complaint Fails to Allege Any False Statements About Plaintiffs' Business Interests.

The injurious falsehood claim should be dismissed because the allegedly false statements attributed to the Straife Defendants relate to Plaintiff Mkrtchyan personally, and do not concern either Mkrtchyan's or Gor's alleged commercial interests in Uzbekistan.  Compl. ¶¶ 65-66 & Ex. 2.  To state a claim for injurious falsehood, a plaintiff must allege pecuniary harm resulting from "defendant's unprivileged publication of false statements *concerning the plaintiff's property or product*."  *Whetstone Candy Co.*, 360 F. Supp. 2d at 81 (emphasis added).  Although related to the tort of defamation, the tort of injurious falsehood does not protect individual reputational interests, but rather "protects against false statements that disparage the plaintiff's interest in, or the quality of the plaintiff's land, chattels, or intangibles."  *Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 151 (D.D.C. 2011) (quoting *Art Metal-U.S.A., Inc. v. United States*, 753 F.2d 1151, 1155 n.6 (D.C. Cir. 1985)).[16]  Although the Complaint states in conclusory fashion that these alleged statements

---

[16] *Art Metal-U.S.A.* is not to the contrary.  There, the question before the Court of Appeals was whether injurious falsehood sounds in defamation for purposes of whether a claim against the U.S. government is barred under the Federal Tort Claims Act.  The court acknowledged that the two torts have converged somewhat over time as defamation law has expanded to allow business entities to recover economic damages flowing from defamation claims.  However, it did not

defamed "Mkrtchyan and his business," the allegedly false statements all pertain to Mkrtchyan only as an individual, and do not make any claims about either Plaintiff's business.[17]  For example, the alleged statement that Mkrtchyan personally "has ties to Russian organized crime," Compl. ¶ 65, does not pertain at all to Plaintiffs' alleged construction, manufacturing, and "other industrial and commercial projects" business projects. *Id.* ¶¶ 135- 136.  Because Plaintiffs fail to allege the necessary element of pecuniary harm resulting from "false statements concerning plaintiff's property or product," *Whetstone Candy Co.*, 360 F. Supp. 2d at 81, Count IV should be dismissed.

## 2.  The Complaint Fails to Plead Special Damages, as Required to State a Claim for Injurious Falsehood.

Plaintiffs' injurious falsehood claim also fails because they have not alleged any specific, causally linked economic loss sufficient to withstand the heightened pleading standard under Rule 9(g) that applies to this claim.  *Passantino v. Weissmann*, 752 F. Supp. 3d 168, 182 (D.D.C. 2024).  In the context of an injurious falsehood claim, Rule 9(g) requires that a plaintiff plead special damages with particularity by identifying a loss, meaning a specific amount, customer or contract, as well as causation, by pleading facts showing that the loss was the natural and direct result of the alleged false statements.  *Id.*; *see also 3M Co.*, 842 F. Supp. 2d at 118.  Plaintiffs do not even come close to clearing this bar.

As described in Section II.A.1, *supra*, Plaintiffs have not alleged any specific contract, customer, or business opportunity that they claim was lost because of the allegedly false

---

purport to eliminate the element of an injurious falsehood claim requiring that the alleged false statements concern the plaintiff's products or interests in property.  *See* 753 F.2d at n.8.

[17] Although the Complaint asserts that the report "included claims relating to well-known U.S. citizens, including members of Gor's advisory board," Compl. ¶ 65, the reference to members of Gor's board to which the Complaint apparently refers is the statement that "Mkrtchyan often invokes their names when attempting to extort people." Compl. Ex. 2, BME_000179. This alleged statement concerns Mkrtchyan personally and does not make any allegation regarding either Plaintiff's alleged commercial activities in Uzbekistan.

statements.  Courts routinely dismiss injurious falsehood claims on this basis.  *See*, 752 F. Supp. 3d at 182 (allegation that plaintiff "suffered direct pecuniary losses as a result of Defendant's accusation, including costs associated with lost business opportunities" failed to satisfy Rule 9(g)) (citation omitted); *cf. Whetstone Candy Co.*, 360 F. Supp. 2d at 82.  This defect alone provides sufficient grounds for dismissal.

Given that Plaintiffs' allegations related to causation fail to satisfy even ordinary Rule 8 notice pleading standards, their deficiencies when judged against the heightened 9(g) pleading standard as it relates to causation are even more egregious.  Plaintiffs fail to plead facts showing that "special damages were the natural and direct result" of Straife Defendants' alleged false statements.  *3M Co.*, 842 F. Supp. 2d at 118 (dismissing injurious falsehood count based on conclusory allegations of causation "with no specific facts reflecting that causation").  Based on nothing more than the temporal proximity of the allegedly false report and Plaintiffs' claimed fall from the Uzbekistani government's graces, Plaintiffs hypothesize that after the report was sent to the Ambassador, it or its contents were somehow disseminated to unidentified government officials in Uzbekistan, who then allegedly "directed" third-party companies in an unspecified manner to "cease working" with Plaintiffs.  Compl. ¶ 138.  Yet, the Complaint is devoid of any factual and non-conclusory allegations to identify any person other than the Ambassador who allegedly received the report or learned of its content.[18]  Similarly, Plaintiffs fail to provide any

---

[18] While the Complaint makes the conclusory statements that the report was transmitted to Uzbekistan's Ambassador "and ultimately the President of Uzbekistan," Compl. ¶ 3, that the allegedly false statements were published "to the Uzbek Ambassador in Washington and his staff, the Uzbek President, and to others," Compl. ¶ 162, and to "investors, lenders, and business partners," Compl. ¶ 168, it does not allege any facts showing that the President, or anyone else in Uzbekistan's government other than the Ambassador, ever received the report or was otherwise made aware of its contents.  Nor does not it identify any "investors, lenders, and business partners" to whom the report was allegedly published.

specific factual support for the inference that the allegedly false statements contained in the report played any role in the actions of alleged business partners or that they resulted in specific and identifiable losses to Plaintiffs. *Browning v. Clinton*, 292 F.3d 235, 246 (D.C. Cir. 2002).

Plaintiffs' causation allegations fall far short of what courts in this Circuit have deemed to be sufficiently "direct and natural" to withstand a motion to dismiss. *See KLEO AG v. Rivada Networks, Inc.*, 148 F.4th 741, 749 (D.C. Cir. 2025) (causation adequately pled where complaint alleged that business partners approached plaintiff with concerns raised by the allegedly defamatory statements "during" same trade conference when those statements were made, and subsequently refused to partner with plaintiff); *Schoen v. Wash. Post*, 246 F.2d 670, 672 (D.C. Cir. 1957) (complaint identified approximately 25% reduction in annual sales following publication of the alleged defamatory statements, and identified three specific customers whose business was lost as a result of that publication). Because the Complaint fails to allege special damages resulting from the alleged misconduct with the requisite particularity, the injurious falsehood claim must be dismissed.

### D.    Plaintiffs' Defamation Claim Must Be Dismissed Because the Complaint Fails to Allege Any Facts Supporting that Defendants Acted with Actual Malice.

Plaintiffs fail to state a claim for defamation, because Plaintiffs are public figures, and so must allege facts supporting that Defendants acted with actual malice—that is, that Defendants knew the allegedly defamatory statements in the report published on August 16, 2024 were false, or acted with reckless disregard as to the truth of those statements. Because the Complaint fails to allege such facts with the necessary specificity, Count III must be dismissed.

#### 1.    *Plaintiffs Are Public Figures for Purposes of Their Defamation Claim.*

A public figure defamation plaintiff must plausibly allege that the defendant acted with actual malice. *Deripaska v. Assoc. Press*, 282 F. Supp. 3d 133, 143 (D.D.C. 2017). Here, Plaintiffs

are at least limited purpose public figures. *Fridman v. Orbis Bus. Intel. Ltd.*, 229 A.3d 494, 504 & 507 (D.C. 2020) (plaintiff was a limited-purpose plaintiff in relation to a "real, public controversy . . . defined as 'Russian oligarchs' involvement with the Russian government and its activities and relations around the world, including the United States'"); *Deripaska*, 282 F. Supp. 3d at 141-42 ("A public controversy exists relating to Russian oligarchs acting on behalf of the Russian government.").

Plaintiffs satisfy each element of the applicable three-part test for determining whether they are limited purpose public figures. The elements of this test are: (1) whether a relevant public controversy exists; (2) the plaintiff's role in the controversy; and (3) "whether the allegedly defamatory statements were 'germane to the plaintiff's participation in the controversy.'" *Von Kahl v. Bur. of Nat'l Affairs, Inc.*, 934 F. Supp. 2d 204, 217-18 (D.D.C. 2013) (citing and quoting *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1296-98 (D.C. Cir. 1980)). The first prong is satisfied, because there is an ongoing public controversy relating to Plaintiffs' relationship with the Government of Uzbekistan and their rivalry with Shadmanov and UCG. That controversy began months, if not years, before the allegedly false statements sent to the Ambassador, when Plaintiff Mkrtchyan was detained by the Government of Uzbekistan from January to April 2024, allegedly at the instigation of Shadmanov. Compl. ¶¶ 1-2. *See Deripaska*, 282 F. Supp. 3d at 142 ("[C]ourts often define the public controversy in expansive terms.") (citation omitted).

Plaintiffs also satisfy the second prong of the test, because they played a central role in this controversy. Among other facts, as alleged in the Complaint, Plaintiffs caused multiple letters to be submitted to Uzbekistan's President and Ambassador relating to this controversy, underscoring the degree to which Plaintiffs have stepped into the public arena. Compl. ¶ 70; *see Deripaska*, 282 F. Supp. 3d at 142. The third prong is also met, because the allegedly false statements are germane

39

to this controversy; indeed, the Complaint expressly ties the August 16, 2024 report to this pre-existing controversy.  Compl. ¶¶ 37-46, 61, 66-67, 70.

      **2.** ***The Complaint Fails to Allege Any Facts Supporting that Defendants Knew the Allegedly Defamatory Statements Were False or Were Reckless as to their Truth.***

Plaintiffs fail to satisfy the actual malice requirement, because the Complaint fails to allege any specific, non-conclusory facts supporting that Defendants knew the challenged statements in the August 16, 2024 report were untrue at the time of publication.  The actual malice standard is "famously daunting," and even at the motion to dismiss stage, "courts may still peer down the road towards a plaintiff's eventual evidentiary burden to deduce whether he plausibly alleged the types of facts that can, if proven, satisfy that burden."  *Couch v. Verizon Commc'ns, Inc.*, 105 F.4th 425, 432 (D.C. Cir. 2024).

Plaintiffs rely solely on conclusory allegations that Defendants knew the statements in the report were untrue based on their prior work for Plaintiffs but fail to allege any specific facts supporting that claim.  The D.C. Circuit has identified three kinds of "evidentiary thresholds" for establishing actual malice: evidence that defendants were subjectively aware that the challenged statements were: "(1) fabricated; (2) so inherently improbable that only a reckless person would have put [them] in circulation; or (3) based wholly on an unverified anonymous telephone call or some other source that [defendants] had obvious reasons to doubt."  *Lohrenz v. Donnelly*, 350 F.3d 1272, 1283 (D.C. Cir. 2003).  Courts have applied this same rubric at the pleading stage.  *E.g.,* *Shapley v. Lowell*, Civ. A. No. 24-2646 (RJL), 2025 WL 2935970, at *8 (D.D.C. Oct. 16, 2026); *Deripaska*, 282 F. Supp. 3d a 134-44.

Plaintiffs do not allege facts satisfying any prong of this analysis.  The Complaint identifies four statements concerning Mkrtchyan in the August 16, 2024 report that Plaintiffs claim were false:

- "[T]hat Mkrtchyan 'has active ties to Russian organized criminal organizations . . . and has been detained and released twice in Uzbekistan in connection with his corrupt activities,'" Compl. ¶ 66;

- That Mkrtchyan "invokes the names of Gor's advisory board members 'when attempting to blackmail people,'" *id.* ¶ 66:

- That Mkrtchyan "is 'involved' in an 'extortion and smear campaign against numerous Uzbekistan citizens,'" *id.* ¶ 65: and

- That "Mkrtchyan made threats to Shadmanov," *id.* ¶ 66.[19]

But Plaintiffs fail to identify a single piece of "information" that Defendants "ignored … confirming that their accusations were false." *Id.* ¶ 8.  The closest Plaintiffs come is their allegation that Defendants "agreed . . .  months earlier that Mkrtchyan had no such ties and was an innocent man wrongfully detained in Uzbekistan."  *Id.* ¶ 66.  Even if true, a previous "agreement" with Plaintiffs' contention is not the standard for actual malice.  Plaintiffs have not alleged that Straife Defendants were aware of any facts contradicting the statements in the report when it was published that would establish that they knew any statements in the report were untrue.  *See Tah v. Global Witness Publ'n, Inc.*, 991 F.3d 231, 242 (D.C. Cir. 2021) (publisher's non-crediting of plaintiff's denials did not support inference of actual malice).  As to the other statements, the Complaint alleges no more than a conclusory label that Straife Defendants "knew [they were] untrue."  Compl. ¶ 66.  This failure is particularly stark, given that Plantiffs' entire theory of actual malice is that Straife Defendants allegedly learned that information in the report was untrue while working for Plaintiffs.  Yet Plaintiffs have not come forward with any such facts or information

---

[19]    Though the Complaint does not quote the language from the report that Plaintiffs' rely upon for this claim, it appears to be referring to the following: "[sic: Mkrtchyan] threatened to use his contacts at media outlets Radio Azatliq and Eltuz to publish inflammatory media articles about Shadmanov alleging that he was involved in corruption."  Compl. Ex. 2 at p. 2 (BME000177).

that Straife Defendants allegedly knew about.  Accordingly, Plaintiffs have not alleged any facts showing that Straife Defendants fabricated the statements in the report under *Lorenz*.

Nor are any of the challenged statements the type of inherently improbable claim under the second *Lohrenz* prong that support an allegation of actual malice.  *See US Dominion, Inc. v. Byrne*, 600 F. Supp. 3d 24, 34 (D.D.C. 2022) (allegations that plaintiff's voting machines were "used 'strategically & aggressively' to 'rig' the 2020 election," that machines "used an 'algorithm' to 'weight one candidate greater than another,'" and that plaintiff "'paid for' a 'shredding truck' to shred '3,000 pounds of ballots'" were inherently improbable) (citations omitted).  And under the third *Lohrenz* prong, the Complaint does not allege that Straife Defendants relied on sources they knew were unreliable, or that, to the extent they were confronted with any reason to question the veracity of any information in the report, failed to investigate further.  *Couch*, 105 F.4th at 433 (complaint failed to allege actual malice where there were no "specific allegations" why the defendant "had 'obvious reasons to doubt the accuracy of'" sources for the allegedly defamatory statements) (citation omitted); *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218-19 (D.D.C. 2012) (dismissing complaint that "contain[ed] *no* factual allegations . . .  suggesting that [defendant] . . . acted *wholly* on an unverified anonymous telephone call").

In contrast, where courts have found allegations of actual malice to be adequately pled, the plaintiff alleged specific facts showing that defendants knew the allegedly defamatory statements were false when published.  *See Zimmerman v. Al Jazeera Am., LLC*, 246 F. Supp. 3d 257, 283-84 (D.D.C. 2017) (holding, in a "close case," that actual malice was adequately pled, where plaintiffs alleged specific reasons why source had questionable motives, that source's allegations were unreliable because they lacked any specific dates or timeframes, that source's lawyers had unequivocally advised the defendants prior to publication "that the purported statements were

false," and specific allegations regarding defendants' failure to investigate or corroborate the source's story). The Complaint here lacks any non-conclusory allegations that the Straife Defendants possessed such knowledge of falsehood when the challenged statements were made.[20]

Finally, Plaintiffs' conclusory allegations that the report also contained false statements about another individual, Uktam Aripov, that defamed Plaintiffs by implication, cannot support a defamation claim. Compl. ¶¶ 64 & 67, "Defamation is personal; a plaintiff who alleges defamation must show that the statement was published 'of and concerning' him." *See Deripaska*, 282 F. Supp. 3d at 144-45 (citation omitted) (holding that statements concerning an American lobbyist who had an "arrangement" with the plaintiff Russian oligarch did not implicate the plaintiff and thus could not support a claim for defamation). Here, the challenged statements concerning Aripov, even if untrue, are not personal to Plaintiffs and thus cannot serve as a basis for their defamation claim.

**E.      Dismissal of the Underlying Tort Claims Requires Dismissal of Plaintiffs' Civil Conspiracy Claim.**

Finally, because Plaintiffs' fail to state a claim for any of the underlying torts in Counts I-Iv of the Complaint, their claim for civil conspiracy in Count V must also be dismissed. *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 446 (D.C. 2013) ("[C]ivil conspiracy is not

---

[20] Plaintiffs' allegations regarding publication of similar and allegedly false content on third-party websites fail for the same reasons, and for the additional reason that the Complaint does not establish any harm to Plaintiffs that is causally linked to any actions by the Straife Defendants. *See* Compl. ¶¶ 91-93 & 95-96. While the Complaint contains a conclusory allegation that Straife Defendants "coordinated," in some unspecified manner, these third-party publications, it does not allege any facts to support that claim, or identify any link between the Straife Defendants and the publications in question. The Complaint does not allege that any government actors in Uzbekistan read or were otherwise influenced by these publications. The Complaint therefore fails to allege that these publications caused Plaintiffs' alleged injuries, or if they did, that such injuries were at all caused by acts of the Straife Defendants.

independently actionable" and "depends on performance of some underlying tortious act[.]");
*Exec. Sandwich Shoppe, Inc. v. Carr Realty Corp.*, 749 A.2d 724, 738 (D.C. 2000).

<u>**CONCLUSION**</u>

Plaintiffs' claims fail both for lack of jurisdiction and failure to state a claim. Jurisdictionally, Plaintiffs allege only the most tenuous connection to this District, a connection which fails to satisfy either the D.C. long-arm statute or the Due Process Clause. The District of Columbia has no interest in this dispute, and any attempt to hale Straife Defendants into Court there is constitutionally infirm.

Plaintiffs' claims are based on an attenuated chain of events that is both missing many links and wholly unsupported by specific factual allegations. Plaintiffs, a public figure and an investment company based in the U.K. with allegedly considerable business interests in Uzbekistan, claim that the Straife Defendants authored an allegedly false report that was sent by a third party to the Uzbekistani Ambassador, who may or may not have been in Washington D.C. when he allegedly received it. They then imply, without any supporting factual allegations, that this report or its contents made its way to Uzbekistan and then into the hands or ears of persons unspecified. From there, the report or its contents were then interpreted in the context of Uzbekistani politics and government policy to fundamentally change perceptions about the Plaintiffs, even though Plaintiff Mkrtchyan had been imprisoned by the Uzbekistani government just months earlier for alleged corruption.

But that's not all. Plaintiffs then ask the Court and Defendants to imagine how that allegedly false content was promulgated by unnamed Uzbekistani government officials to somehow make its way to still more persons—again unspecified but somehow affiliated with decisionmakers at multinational corporations doing business with Plaintiffs—and that this information, as opposed to other business justifications, prompted these companies to cease doing

business with Plaintiffs. Such conjecture might provide sufficient basis for a spy novel, but fails to provide the plausibility and particularity required by the Federal Rules of Civil Procedure. Plaintiffs' implausible and vague Complaint should be dismissed.

Dated: February 19, 2026               Respectfully submitted,

                                       */s/Jennifer Quinn-Barabanov*
                                       Jennifer Quinn-Barabanov (D.C. Bar No. 452644)
                                       STEPTOE LLP
                                       1330 Connecticut Ave., NW
                                       Washington, DC  20036-1795
                                       Telephone:     (202) 429-3000
                                       Facsimile:     (202) 429-3902
                                       jquinnbarabanov@steptoe.com

                                       Craig Smyser *(pro hac vice)*
                                       David Isaak *(pro hac vice)*
                                       STEPTOE LLP
                                       717 Texas Avenue, Suite 2800
                                       Houston, TX 77002
                                       Telephone:     (713) 221-2300
                                       Facsimile:     (713) 221-2320
                                       csmyser@steptoe.com
                                       disaak@steptoe.com

                                       *Attorneys for Joseph Patrick Fleming and Straife LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2026, I electronically filed this document with the Clerk of the Court of the U.S. District Court of the District of Columbia by using the CM/ECF system, which will automatically generate and serve notices of this filing to all counsel of record.


*/s/ Jennifer Quinn-Barabanov*
Jennifer Quinn-Barabanov