**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GOR INVESTMENT LIMITED, *et al.*,<br><br>               *Plaintiffs*,<br><br>     v.<br><br>STRAIFE LLC, *et al.*,<br><br>               *Defendants*. | Case No. 1:25-CV-04506-EGS-MJS |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR CONTEMPT AGAINST OMNISTRAT GROUP LLC
AND EUGENE GOUREVITCH**

John B. Bellinger III
Ryan P. Hartman
Sally L. Pei
Volodymyr Ponomarov
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, D.C. 20001-3743

*Counsel for Plaintiffs Gor Investment
Limited & Ovik Mkrtchyan*

**TABLE OF CONTENTS**

I.    Factual Background ...................................................................................................1

II.   Procedural Background............................................................................................3

III.  OmniStrat's Failure to Comply with the Court's Order ........................................5

IV.  OmniStrat's Deficient Production Confirms It Has Relevant Documents ..........8

V.   The Court Should Hold OmniStrat and Gourevitch in Contempt Pending Their Full Compliance with the Court's Order Enforcing the Subpoena .............................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Competitive Enterprise Institute v. Office of Science & Technology Policy*,
  827 F.3d 145 (D.C. Cir. 2016) ...................................................................................................11

*Food Lion, Inc. v. United Food & Commercial Workers International Union*,
  103 F.3d 1007 (D.C. Cir. 1997) ................................................................................................10

*Freeman v. Giuliani*,
  691 F. Supp. 3d 32 (D.D.C. 2023) .............................................................................................13

*In re Barnwell Enterprises Ltd.*,
  265 F. Supp. 3d 1 (D.D.C. 2017) ......................................................................................... 10-11

*In re Gonzalez*,
  2022 WL 17583628 (S.D. Fla. Aug. 8, 2022) ...........................................................................11

*In re Sealed Case*,
  77 F.4th 815 (D.C. Cir. 2023) ...................................................................................................10

*In re Special Counsel Investigation*,
  374 F. Supp. 2d 238 (D.D.C. 2005) ...........................................................................................13

*Landmark Legal Foundation v. E.P.A.*,
  272 F. Supp. 2d 70 (D.D.C. 2003) .............................................................................................14

*Nilva v. United States*,
  352 U.S. 385 (1957) ............................................................................................................10, 13

*Shillitani v. United States*,
  384 U.S. 364 (1966) ...................................................................................................................10

*State Farm Mutual Automobile Insurance Co. v. Precious Physical Therapy, Inc.*,
  2020 WL 7056039 (E.D. Mich. Dec. 2, 2020) ..........................................................................11

*United States v. Voss*,
  82 F.3d 1521 (10th Cir. 1996) ...................................................................................................13

*Waymo LLC v. Uber Technologies, Inc.*,
  2017 WL 297280 (N.D. Cal. July 2, 2017) ................................................................................11

*Wilson v. United States*,
  221 U.S. 361 (1911) ............................................................................................................10, 12

**Other Authorities**

Fed. R. Civ. P. 45 ..................................................................................................4, 5, 10

Plaintiffs Gor Investment Limited and Ovik Mkrtchyan respectfully move the Court to hold non-party OmniStrat Group LLC ("OmniStrat") and its co-founder, managing member, and president, Eugene Gourevitch, in contempt for OmniStrat's failure to comply with Plaintiffs' subpoena and the Court's June 10, 2026, Memorandum Order (ECF No. 39) ("Order") to produce all documents responsive to the subpoena.

## I.    Factual Background

OmniStrat's and Gourevitch's factual connection to this matter is set out more fully in Plaintiffs' Memorandum of Law in Support of Their Motion to Compel ("MTC") (ECF No. 35-1), which the Court granted in its Order. A brief summary is below.

The First Amended Complaint ("Complaint") alleges that Defendants wrongfully participated in a coordinated campaign to prepare and transmit false and defamatory statements to Uzbekistan's Ambassador and Embassy in Washington, D.C., in order to damage Plaintiffs' reputation, and then worked to lend credibility to those same allegations through a media and public-relations campaign. *See, e.g.*, Am. Compl. ¶¶ 1, 7-9, 60-61, 83-129 (ECF No. 25). Defendants undertook these actions for the benefit of an Uzbek cement magnate, Ulugbek Shadmanov, and his company, United Cement Group ("UCG"). *Id.* ¶¶ 1, 9. Defendants' key instruments of that campaign included the anonymous report (the "Straife report") that Defendants Straife and Fleming (the "Straife Defendants") prepared and then hired a former U.S. ambassador to transmit it via letter (the "Straife letter") to Uzbekistan's Ambassador and Embassy in Washington; Defendant Payne's letter to the Ambassador and Embassy one week later that repeated the same allegations (the "Payne letter"); and online publications that reinforced the same themes. *Id.* ¶¶ 83-129 & Exs. 2-6 to Am. Compl. (ECF Nos. 25-2, 25-3, 25-4, 25-5, 25-6). The Straife report, Payne letter, and online publications falsely accused Mkrtchyan and Gor of ties to Russian organized crime, extortion, and corrupt activities, while also attacking Plaintiffs' business

1

associate, Uktam Aripov, and then smearing Plaintiffs by association. *Id.* ¶¶ 84-88 & Ex. 2 to Am. Compl. (ECF No. 25-2).

Gourevitch is the "convicted-felon-turned-lobbyist" for UCG and Shadmanov referenced in the Complaint with whom Defendants worked. *Id.* ¶ 127. Gourevitch is OmniStrat's president, co-founder, and managing member. OmniStrat's public filings and Gourevitch's own public statements show that OmniStrat possesses documents about the same campaign. In its filings under the Foreign Agents Registration Act ("FARA"), OmniStrat disclosed that its foreign principal was Shadmanov, that its agreement was with UCG on Shadmanov's behalf, and that its work included strategic advocacy, lobbying, public diplomacy, perception management, media outreach, engagement with diplomatic representatives and decision-makers, and the preparation and distribution of advocacy materials during the period of time relevant to the campaign. Ex. A to Ryan Hartman's Declaration in Support of MTC ("Hartman MTC Decl.") (ECF No. 35-5). In a recent video, Gourevitch bragged about work involving "strategic warfare" for Shadmanov and UCG, using a narrative that tracks almost point-for-point the Straife report, the Payne letter, and an article by the International Consortium of Investigative Journalists ("ICIJ") that is referenced in the Complaint (Am. Compl. ¶ 124 (ECF No. 25)) and for which Gourevitch claims credit. Hartman MTC Decl. Ex. B at 8:11-10:11 (ECF No. 35-6).

Those parallels are powerful evidence of relevance. Gourevitch falsely described a late-2023 dispute in which Shadmanov supposedly rejected a nonviable business project with a businessperson connected to someone he falsely claims is a Russian oligarch (*id.* at 8:15-8:18); the Straife report says the same thing, falsely asserting that a dispute arose because Shadmanov refused a "nonviable commercial project" with Mkrtchyan (Am. Compl. Ex. 2 at 3 (ECF No. 25-

2

2)).[1] Gourevitch described a purported $25,000 lobbying engagement in January 2024 related to UCG (Hartman MTC Decl. Ex. B at 8:21-9:16 (ECF No. 35-6)); the Straife report and the ICIJ article describe the same alleged $25,000 lobbying arrangement and sanctions narrative (Am. Compl. Ex. 2 at 4 (ECF No. 25-2)). Gourevitch described Congressman Wesley Hunt's House-floor statement, Hunt's letter to the U.S. Office of Foreign Assets Control ("OFAC"), and Payne's $3,300 campaign contribution (Hartman MTC Decl. Ex. B at 9:5-9:16 (ECF No. 35-6)); those same events appear in the Straife report and the ICIJ article (Am. Compl. Ex. 2 at 4, 71-78 (ECF No. 25-2)). Gourevitch claimed to have "worked with a number of international media outlets, one of which published a major exposé in February 2025" (Hartman MTC Decl. Ex. B at 9:25-10:2 (ECF No. 35-6))—a description that tracks the timing and content of the ICIJ article referenced in the Complaint (Am. Compl. ¶ 124 (ECF No. 25)). Gourevitch even mentions working with "former U.S. ambassadors" (Hartman MTC Decl. Ex. B at 4:1-4:2 (ECF No. 35-6)), when Defendants used a former U.S. ambassador, Stephen Akard, to transmit the Straife report to Uzbekistan's Ambassador and Embassy in Washington (Am. Compl. ¶¶ 97-102 (ECF No. 25)). Those are the very issues on which Plaintiffs seek discovery.

## II.     Procedural Background

Accordingly, on March 24, 2026, Plaintiffs served OmniStrat with a subpoena setting out nine narrowly tailored requests for documents directly related to the conspiracy, the Straife Defendants' jurisdictional assertions in their motion to dismiss,[2] Defendants' coordination with third parties, and the scope and execution of the campaign targeting Plaintiffs in Washington. *See* ECF No. 35-2. The subpoena required OmniStrat to produce documents by April 15. ECF No. 35-

---

[1] The citations to pages of the Complaint's exhibits are to the ECF pages.

[2] The Straife Defendants moved to dismiss for lack of personal jurisdiction. Defendant Payne answered the Complaint.

3. The subpoena specifically encompassed responsive documents that may be held by OmniStrat's officers, directors, employees, agents, members, managers, and shareholders, expressly including Gourevitch. *Id.* at Definition No. 20. Any objections to the subpoena were due by April 7. *See* Fed. R. Civ. P. 45(d)(2)(B). OmniStrat did not serve objections by that deadline, did not move to quash or modify the subpoena, did not seek an extension, and did not produce any documents by the April 15 production deadline.

Plaintiffs then made multiple attempts to obtain OmniStrat's compliance without the Court's intervention, including in communications with three lawyers for OmniStrat: Keith Silverstein, Richard Preston, and Hector Hernandez. *See* ECF No. 35-1 at 11 (describing efforts to obtain OmniStrat's compliance). Those lawyers offered phone calls that they failed to attend, promised document productions that never materialized, engaged in a shell game about which lawyer was actually handling the matter at any given time, and then failed to respond to repeated communications. *Id.* Plaintiffs filed their MTC on May 16. ECF No. 35. OmniStrat did not oppose or otherwise respond to the motion. *See* ECF No. 37.

On June 10, the Court granted Plaintiffs' MTC. ECF No. 39. The Court found that OmniStrat had failed to serve timely objections to the subpoena, failed to serve any response or produce responsive documents to the subpoena, and failed to oppose Plaintiffs' MTC. ECF No. 39 at 5-6. The Court also held that "the information requested [by the subpoena] appears relevant and not obviously overbroad or otherwise inappropriate" and ordered OmniStrat to produce documents responsive to the subpoena within 14 days of the Order—*i.e.*, by June 24, 2026. *Id.*

The Court also "expressly caution[ed] that if OmniStrat fails to comply [with the June 10 Order], it risks sanctions, including possible contempt." *Id.* at 6. Finally, the Court ordered Plaintiffs to serve the Order on OmniStrat through its registered agent and through the lawyers

4

who previously advised Plaintiffs that they represented OmniStrat in connection with the subpoena

and related matters. *Id.* at 7. Plaintiffs served OmniStrat's three lawyers on the same day and

OmniStrat's registered agent on the next day. *See* ECF No. 40 (Certificate of Service).[3]

### III.    OmniStrat's Failure to Comply with the Court's Order

On June 26—two days *after* the Court-ordered deadline for compliance—OmniStrat served

its production, along with a written response styled as "RESPONSES AND OBJECTIONS TO

PLAINTIFFS' SUBPOENA TO PRODUCE DOCUMENTS." Ex. 1 to Declaration of Ryan P.

Hartman in support of this Contempt Motion ("Hartman Contempt Decl."). In the response,

OmniStrat stated that it "objects to the subpoena to produce documents" and that, contrary to the

subpoena's Definition No. 20, it searched only for documents in OmniStrat's "corporate systems"

and would not produce materials "in the personal custody of any individual," including its

president, co-founder, and managing member Gourevitch. *Id.* at 2, 4. OmniStrat also asserted a

hodgepodge of other undeveloped and long-waived objections, invoking everything from

"Temporal scope / entity formation" and "Subject-matter mismatch" to "First Amendment,"

"Confidentiality, FARA, and foreign data," and attorney-client privilege, among other objections.

*Id.* at 3-4.

On the same day, Plaintiffs promptly advised OmniStrat that any objections to the

subpoena were due on April 7, and thus they had long been waived and could not be revived after

the Court compelled OmniStrat to comply with the subpoena as issued and ruled that any

---

[3] Shortly after the Court's June 10 Order, Plaintiffs also served an identical subpoena on Gourevitch in Florida on June 12. On June 26, Gourevitch, represented by OmniStrat's lawyer Silverstein, moved to quash the Gourevitch subpoena in the Southern District of Florida (1:26-cv-24451). On July 2, Plaintiffs opposed Gourevitch's motion and cross-moved to transfer it to this Court pursuant to Rule 45(f), explaining that transfer would promote judicial economy and avoid potentially inconsistent rulings because this Court has already addressed the identical OmniStrat subpoena. In the alternative, Plaintiffs asked the Florida court to compel production. The Florida court has not yet ruled on the motions.

objections had been waived. Plaintiffs also advised OmniStrat that its June 26 production (consisting of about 20 documents) was facially deficient. Among other things, OmniStrat had produced very few emails or other communications despite the subpoena's broad definitions of "documents" and "communications"; appeared to have limited its search to undefined "corporate systems"; and took the position that it would not produce its materials that were "in the personal custody of any individual," even though the subpoena—and the Court's Order enforcing it— imposed no such limitation. Plaintiffs asked OmniStrat to confirm whether it intended to make further productions, whether it was withholding responsive documents on any basis, when it would produce its privilege log, and whether it would withdraw its long-waived objections served on June 26. Plaintiffs offered to meet and confer with OmniStrat on these and other discovery deficiencies. Hartman Contempt Decl. Ex. 2.1.

What followed was more delay and obstruction, consistent with OmniStrat's broader pattern here. The correspondence below confirmed that, despite the Court-ordered June 24 deadline, OmniStrat still has not complied with Plaintiffs' subpoena more than two weeks later:

- On June 26, after Plaintiffs identified deficiencies in OmniStrat's production and asked OmniStrat to withdraw its belated objections, Silverstein—one of the attorneys who had previously represented to the undersigned on the phone and in an email that he was counsel for OmniStrat—stated that he did not represent OmniStrat and represented only OmniStrat's president, co-founder, and managing member, Gourevitch. Hartman Contempt Decl. Ex. 2.2.

- On June 29, Richard Preston, another OmniStrat attorney, largely ignoring the issues raised in Plaintiffs' June 26 email, stated that OmniStrat's anticipated privilege log consisted of 15 documents, "mostly draft memos and unexecuted contracts to and from OmniStrat attorneys," and it "will be sent over shortly." He also stated that OmniStrat's email search "should have captured" relevant emails within OmniStrat's "possession" and asked Plaintiffs to identify any custodians "in addition [to] Eugene Gourevitch" in case Plaintiffs wanted OmniStrat to "adjust the search and verify the results." Hartman Contempt Decl. Ex. 2.3. Later that day, Preston provided a "draft" privilege log and stated that "20 additional emails & documents that may not have been sent earlier" would be produced "sometime tomorrow." The "log" lacked basic elements, such as the names of people who were on communications, and was obviously inaccurate, with

6

one message dated in the future. Hartman Contempt Decl. Ex. 2.4; *see also id.* Ex. 3 (Privilege Log).

- On June 30, Plaintiffs again responded that OmniStrat had long since waived its objections and asked about OmniStrat's basis for withholding documents under a claim of privilege at this point. Plaintiffs also noted that OmniStrat could not unilaterally limit its production. Plaintiffs again explained that the subpoena covered OmniStrat's officers, directors, agents, representatives, and others acting on OmniStrat's behalf (including, specifically, Gourevitch), as well as emails, texts, chats, messaging-app communications, shared-drive materials, and other ESI. Plaintiffs further noted that the Court ordered OmniStrat to comply with the subpoena as issued. Plaintiffs requested OmniStrat's search protocol, including its custodians, search terms, date ranges, sources searched, non-email sources searched, and any exclusions from review or production. Plaintiffs also identified deficiencies in OmniStrat's privilege log, including missing or facially incorrect dates, insufficient identification of senders and recipients, and inadequate information to assess privilege claims. Hartman Contempt Decl. Ex. 2.3.

- On July 1, OmniStrat's counsel Preston stated that he had "received information on the scope of the search and additional custodians," that OmniStrat was "checking on the file location to verify they were included in the search," and that "non email sources [were] being checked." He also stated that he was "awaiting for approval" regarding withdrawal of OmniStrat's belated objections and "should have . . . definitive answers tomorrow." Hartman Contempt Decl. Ex. 2.5.

- On July 2, OmniStrat's counsel Preston stated that OmniStrat was "not inclined" to withdraw its "ongoing objections" without further discussions regarding confidentiality and third-party nondisclosure agreements. He also stated that OmniStrat was open to meeting and conferring regarding confidentiality, search terms, and custodians; that OmniStrat's Vice President of Legal Affairs would participate; and that OmniStrat was preparing an update addressing Plaintiffs' identified deficiencies. Hartman Contempt Decl. Ex. 2.6.

- On July 2, Plaintiffs responded that the Court had ordered OmniStrat to produce all documents responsive to the subpoena and warned that, "[i]f OmniStrat insists on maintaining objections (which the Court determined OmniStrat waived) or withholding responsive documents, we will move for contempt of OmniStrat and any of its management who are failing to comply with the order." Plaintiffs included Preston and Silverstein (who represents Gourevitch and previously represented OmniStrat) on the email. Hartman Contempt Decl. Ex. 2.6.

- On July 3, OmniStrat's counsel responded that they "are working on the documents"; that "additional custodians will be searched for responsive documents"; and that OmniStrat "will withdraw the Objections and deliver a complete and accurate production" by July 6. Hartman Contempt Decl. Ex. 2.6.

- By the end of the day on July 6, after OmniStrat failed to provide the promised additional documents, Plaintiffs followed up and requested a status update. Hartman Contempt Decl. Ex. 2.6.

- On July 7, OmniStrat's counsel responded that they were "confirming the final set of documents from OmniStrat," that the "privilege log and redactions are being updated," and that the "declaration of the search is being prepared to address [Plaintiffs'] concerns." Hartman Contempt Decl. Ex. 2.6.

- On July 9, Plaintiffs again followed up after receiving no further update, noting that more than two weeks had passed since the Court-ordered production deadline and asking OmniStrat to confirm when it would produce all responsive documents and resolve the outstanding questions concerning its search and production. OmniStrat's counsel responded with more delay, and subsequently claimed that OmniStrat might make a production the following week. Hartman Contempt Decl. Ex. 2.6.

As of today, OmniStrat still has not completed its production, withdrawn its waived objections, provided an adequate privilege log, supplied the information necessary to evaluate the adequacy of its search, and addressed other discovery issues raised by Plaintiffs.

## IV.    OmniStrat's Deficient Production Confirms It Has Relevant Documents

The Court has already found that Plaintiffs' subpoena seeks relevant information and ordered OmniStrat to comply. ECF No. 39 at 5-6. OmniStrat's own deficient production confirms as much: even the limited documents OmniStrat produced show that it possesses responsive materials concerning the campaign at issue, while its unilaterally narrowed search, belated objections, and continued withholding prevent Plaintiffs from obtaining the full discovery ordered by the Court. For example:

- OmniStrat produced a July 27, 2025, report that repeats allegations similar to those in the underlying litigation, including that "Mkrtchyan [is] a businessman with documented ties to Russian organized crimes," "Mkrtchyan … operates Gor Investments [that] appear[s] to be connected to Russian organized crime networks and [is] designed to advance Russian strategic interests in Central Asia," and "Mkrtchyan's ties to Russian organized crime, *as later acknowledged by [Defendant] Steven Payne himself*, reveal … part of a broader Russian strategy …" Hartman Contempt Decl. Ex. 4 (emphasis added).

- OmniStrat produced a July 28, 2025, investigative dossier titled "Ulugbek Shadmanov Case," which likewise repeats allegations concerning Plaintiffs, including "Russian

8

- Connection: Mkrtchyan's ties to Russian organized crime concealed." Hartman Contempt Decl. Ex. 5.

- OmniStrat produced letters from Plaintiffs' English counsel to Radha Stirling, who published defamatory articles about Mkrtchyan—some of the key publications described in the Complaint. OmniStrat's possession of these letters suggests that OmniStrat coordinated with Stirling and other key participants. Hartman Contempt Decl. Ex. 6.

- OmniStrat produced an article titled "Hovik [Ovik] Mkrtchyan, Uktam Aripov, NRCO Engineering SA and the world laundry in billion," repeating the campaign's allegations described in the Complaint, confirming that OmniStrat and Gourevitch possess materials concerning the same publications and allegations at issue in this case. Hartman Contempt Decl. Ex. 7.

- OmniStrat produced a letter prepared by one of Gourevitch's companies to UCG and Shadmanov that identifies a senior employee of Defendant Straife as having performed work connected to the campaign. Hartman Contempt Decl. Exs. 8, 9.

- OmniStrat's privilege log suggests that Gourevitch had a meeting with Defendant Payne during the time period of the campaign. Hartman Contempt Decl. Ex. 3.

**V.    The Court Should Hold OmniStrat and Gourevitch in Contempt Pending Their Full Compliance with the Court's Order Enforcing the Subpoena**

   **A.    The Court Should Hold OmniStrat in Contempt**

OmniStrat's June 24 deadline to comply with the Court's Order has passed, and OmniStrat did not comply. Although OmniStrat served a belated production, consisting of approximately 20 documents, along with waived and improper objections on June 26, that production did not satisfy the subpoena and the Court's Order enforcing that subpoena.

Plaintiffs' subsequent correspondence with OmniStrat's counsel confirms why contempt is warranted. OmniStrat admits it still has not produced all responsive documents and has not searched all relevant custodians and sources. *See supra* at 6-8; Hartman Contempt Decl. Ex. 2. Moreover, OmniStrat's unilateral narrowing of the subpoena to OmniStrat's "corporate systems," its refusal to produce OmniStrat documents held by its officers, employees, and others (including Gourevitch), and its admitted failure thus far to produce documents even from Gourevitch's

OmniStrat email address are particularly problematic because the subpoena—which the Court's Order enforced according to its terms—specifically covers documents held by OmniStrat's officers, directors, employees, agents, members, managers, and shareholders, including Gourevitch himself, and reaches emails, texts, chats, messaging-app communications, shared-drive materials, local files, and other ESI.

Rule 45(g) authorizes this Court to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." *See also Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."). The D.C. Circuit has affirmed contempt where a non-party failed to produce documents in violation of the court's order compelling compliance with a subpoena. *Food Lion, Inc. v. United Food & Commercial Workers International Union*, 103 F.3d 1007, 1020 (D.C. Cir. 1997); *see also In re Sealed Case*, 77 F.4th 815, 835 (D.C. Cir. 2023) (affirming contempt order and a $350,000 sanction for a three-day delay in complying with a discovery obligation).

It is long established that a subpoena to a company compels the company and its officers to produce documents in the officers' possession. *Wilson v. United States*, 221 U.S. 361, 377-78 (1911); *Nilva v. United States*, 352 U.S. 385, 387-94 (1957). This principle has been carried forward in cases under Rule 45, which requires production of all "documents, electronically stored information, or tangible things in [a company's] possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). For example, courts "have repeatedly found that employers have control over their employees and can be required to produce documents in their employees' possession." *In re*

10

*Barnwell Enters. Ltd.*, 265 F. Supp. 3d 1, 16 (D.D.C. 2017) (quotation marks omitted).[4] The same is true for documents in the personal possession of corporate officers, and even independent contractors. *See, e.g.*, *Waymo LLC v. Uber Tech., Inc.*, No. 17-cv-00939, 2017 WL 297280, at *2 (N.D. Cal. July 2, 2017) (ordering company to produce "responsive documents in the custody, control, or possession of its officers and agents" and finding that the company "cannot hide responsive documents simply because these officers' work for [the company] was done using their personal email accounts"); *In re Gonzalez*, No. 20-mc-24628, 2022 WL 17583628, at *8 (S.D. Fla. Aug. 8, 2022) (holding company in civil contempt and imposing a $5,000-per-day fine for failing to produce responsive documents from independent contractors, finding that "it is clear that corporations have the right to obtain business communications from current employees and independent contractors . . . including where communications are located on personal devices such as cell phones"); *see generally Competitive Enter. Inst. v. Off. of Sci. & Tech. Pol'y*, 827 F.3d 145, 148-50 (D.C. Cir. 2016) (applying possession and control principles to determine that the Freedom of Information Act requires a federal agency to search email that an agency director maintained on a personal email account).

Applying these principles, OmniStrat is required to produce documents held by Gourevitch, as well as its other officers, directors, employees, and agents, and individuals who act on OmniStrat's behalf. Gourevitch is OmniStrat's president and co-founder (Hartman MTC Decl.

---

[4] As one court explained, "The fact that responsive emails, if they exist, will be in the employees' personal email accounts is of no moment. As a practical matter, if an employer were able to avoid producing business documents by simply maintaining anything potentially discoverable in an employee's personal email account, this could have the potential to incentivize employers to require the use of personal accounts for business purposes or to store business documents in personal accounts. Such evasive measures would cut against the purpose of the federal civil rules that allow for broad discovery and would inhibit the resolution of cases on the merits." *State Farm Mut. Auto. Ins. Co. v. Precious Physical Therapy, Inc.*, No. 19-10835, 2020 WL 7056039, at *6 n.4 (E.D. Mich. Dec. 2, 2020).

Exs. B & D (ECF No. 35-6; ECF No. 35-8)); Gourevitch signed as OmniStrat's managing member OmniStrat's FARA forms for OmniStrat's work on behalf of Shadmanov (Hartman MTC Decl. Ex. A (ECF No. 35-5)); Gourevitch signed the contract with United Cement Group for that work (*id.*); OmniStrat's website identifies Gourevitch as one of a handful of people working at OmniStrat (Hartman MTC Decl. Ex. D (ECF No. 35-8)); OmniStrat's FARA forms identify Gourevitch and others as having "control and decision-making authority" over OmniStrat (Hartman MTC Decl. Ex. A (ECF No. 35-5)); and Gourevitch bragged in a video on OmniStrat's YouTube channel about work involving "strategic warfare" for Shadmanov and UCG, using a narrative that tracks almost point-for-point the Straife report, the Payne letter, and articles referenced in the Complaint, including the one for which Gourevitch claims credit (*supra* at 2; Hartman MTC Decl. Ex. B (ECF No. 35-6)).

Here, the Court ordered OmniStrat to produce all responsive documents, and expressly warned OmniStrat that failure to comply with that Order could result in contempt. OmniStrat nonetheless chose to disregard the Court's Order. Because OmniStrat admits it has not produced all responsive documents and, moreover, has refused to search sources of information within its possession, custody, or control, the Court should hold OmniStrat in conditional contempt and impose a daily fine until it purges that contempt.

### B.     The Court Should Also Hold Gourevitch in Contempt

It is well-established that "[a] command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the [subpoena] directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt." *Wilson*, 221 U.S. at 376 (upholding criminal

contempt against a corporate officer for a corporation's failure to produce documents held by that officer); *see also Nilva*, 352 U.S. at 387-94 (upholding criminal contempt conviction against an individual for failing to produce documents responsive to a subpoena directed to a company he owned, holding that "[I]t is settled that a criminal contempt is committed by one who, in response to a subpoena calling for corporation or association records, refuses to surrender them when they are in existence and within his control."); *United States v. Voss*, 82 F.3d 1521, 1526 (10th Cir. 1996) ("[W]e hold that when a subpoena or order unequivocally directs an organization to produce records, the persons who have knowledge of the court's action and who 'fail to take appropriate action within their power' to comply with the subpoena or order may be held in contempt"). Moreover, courts "have routinely directed a corporation's officers to obey court orders and imposed sanctions on those officers when their entities failed to comply." *Freeman v. Giuliani*, 691 F. Supp. 3d 32, 70 (D.D.C. 2023); *see also In re Special Couns. Investigation*, 374 F. Supp. 2d 238, 241-42 (D.D.C. 2005) (observing that the corporate defendant "as well as its controlling officers, have no legal right to defy a final court order, and an officer failing to take steps to have the corporation comply could be punished by contempt").

Gourevitch is OmniStrat's president, co-founder, and managing member. There is no doubt he is on notice of the subpoena and the Court's Order because the undersigned served his counsel, Silverstein, with the Order. ECF No. 40. Silverstein also represented OmniStrat in response to the subpoena. ECF No. 35-1 at 11. And Silverstein was included on Plaintiffs' recent emails stating that "[i]f OmniStrat insists on maintaining objections (which the Court determined OmniStrat waived) or withholding responsive documents, we will move for contempt of OmniStrat and any of its management who are failing to comply with the order." Hartman Contempt Decl. Ex. 2.6.

13

* * *

Plaintiffs therefore respectfully request that the Court hold OmniStrat and Gourevitch in conditional contempt until OmniStrat produces all responsive documents in its possession, custody, or control, including those in the possession, custody, or control of Gourevitch and its other officers, directors, employees, agents, members, managers, and shareholders. Plaintiffs further request the Court award Plaintiffs their reasonable attorneys' fees and costs incurred in enforcing the subpoena and the Court's Order, and grant any other relief the Court deems just and proper. *See Landmark Legal Found. v. E.P.A.*, 272 F. Supp. 2d 70, 86-87 (D.D.C. 2003) ("It is well-established that courts may award attorneys' fees and expenses in conjunction with a civil contempt proceeding … The frequency and severity of abuses can be relevant to the extent of attorney's fees that may be awarded."). A proposed order is attached.

Dated: July 10, 2026

Respectfully submitted,

/s/ Ryan P. Hartman
John B. Bellinger III (D.C. Bar No. 405059)
Ryan P. Hartman (D.C. Bar No. 974807)
Sally L. Pei (D.C. Bar No. 1030194)
Volodymyr Ponomarov (D.C. Bar No. 90003758)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, D.C. 20001-3743
Telephone: (202) 942-5000
Facsimile: (202) 942-5999
John.Bellinger@arnoldporter.com
Ryan.Hartman@arnoldporter.com
Sally.Pei@arnoldporter.com
Volodymyr.Ponomarov@arnoldporter.com

*Counsel for Plaintiffs*

**CERTIFICATE OF CONFERENCE**

I hereby certify that I attempted to confer with counsel for OmniStrat and Gourevitch regarding the matters raised in this motion, but we were unable to reach resolution.

/s/ Ryan P. Hartman
Ryan P. Hartman

**CERTIFICATE OF SERVICE**

I hereby certify that I caused the foregoing to be filed through the CM/ECF system on July 10, 2026, which will notify all counsel of record, and that I will cause a copy to be served on non-parties OmniStrat and Gourevitch by serving their counsel via email.

/s/ Ryan P. Hartman
Ryan P. Hartman

15